Marie Napoli, Esq.
Napoli Law PLLC
1301 Avenue of the Americas, Tenth Floor
New York, New York 10019

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
                               :

UNIVERSITAS EDUCATION, LLC,
individually and on behalf of the CHARTER     :   Civil Action No. :
OAK TRUST,
                               :

             Plaintiff,
                               :   **FIRST AMENDED COMPLAINT**
      v.
                               :

T.D. BANK, N.A.,                              **DEMAND FOR A JURY TRIAL**
                               :

            Defendant.
------------------------------------------------------- X

        Plaintiff Universitas Education, LLC ("Universitas"), individually and on behalf of the

Charter Oak Trust, by its undersigned attorneys Napoli Law PLLC, as and for its First

Amended Complaint against T.D. Bank, N.A. ("TD Bank"), alleges as follows:

## NATURE OF THE ACTION

        1.      This action concerns the unlawful, knowing, and willful participation by the

Defendant TD Bank and its agents in a fraudulent scheme that converted more than $30 million

in life insurance proceeds that TD Bank's client, the Charter Oak Trust (the "Trust"), held in

trust for Plaintiff Universitas, the sole beneficiary of said life insurance proceeds that the Trust

held, prior to TD Bank's agreement with the trustee of the Trust to unlawfully remove said

proceeds.

2.	As set forth in detail herein, TD Bank (i) intentionally ignored numerous red flags, (ii) willfully and intentionally chose to withhold its knowledge of the trustee's fraudulent conduct from the Trust – TD Bank's own client to which it owed fiduciary duties – which conduct effectuated the unlawful conversion of the life insurance proceeds, and (iii) willfully, intentionally, and knowingly provided material assistance to the trustee to accomplish this conversion by creating for the trustee plethora bank accounts opened and used solely to move and launder the life insurance proceeds held by the Trust for the sole and exclusive benefit of Universitas.

3.	As a direct and proximate result of TD Bank's complicity in this fraudulent scheme, Universitas has sustained damages in the approximate amount of $30 million, representing the life insurance proceeds that TD Bank helped the trustee to steal.  Accordingly, TD Bank is liable to the Trust and its beneficiary Universitas for the stolen Trust funds.

4.	Specifically, in May 2009, the Trust received two checks totaling $30,677,276.85 in death benefits from Lincoln National Life Insurance Company ("Lincoln") made payable to the Trust's sole beneficiary of those death benefits: Universitas.

5.	The Trust's trustee, sponsor, and administrator Nova Group, Inc. (and its alter ego Nova Benefit Plans LLC) ("Nova" or "the Trustee") unlawfully refused to pay to Universitas the death benefits and refused to disclose to Universitas the location of the death benefits.

6.	Unbeknownst to Universitas, but known to TD Bank, Nova, acting through its agents, President Wayne Bursey ("Bursey") and Chairman (Bursey's brother-in-law) Daniel Carpenter ("Carpenter") (together, the "Nova Group"), illegally conspired with TD Bank to convert the Trust assets – and did convert the Trust assets – by nefariously transferring the death benefits from the Trust to multiple TD Bank accounts under the Nova Group's control.

7.     TD Bank opened all of these initial bank accounts for the Nova Group in furtherance of accomplishing the Nova Group's and TD Bank's scheme (including, audaciously, opening for the Nova Group a <u>non-trust account</u> to stand in the name of the Trust).

8.     Not only did TD Bank accept the Nova Group's deposit of the more than $30 million of known trust funds from Lincoln into a non-trust account controlled by the Nova Group, TD Bank also rubber-stamped each and every one of the Nova Group's *in seriatim* surreptitious fraudulent transfers from that non-trust account to the various shell accounts under the Nova Group's control.

9.     TD Bank was aware that its actions were facilitating a fraud on its client, the Trust, and willfully concealed the fraud from the Trust's beneficiary, Universitas.

10.     At the time that TD Bank and the Trust received the trust funds from Lincoln in May of 2009, President Bursey and Chairman Carpenter were no strangers to defrauding clients and looting client accounts for their own benefit.

11.     As described more fully below, since at least 2004, Bursey, Carpenter, and the entities that they controlled had been involved in several public widely-reported civil and criminal proceedings <u>involving financial fraud and misappropriation of client funds</u>, as in the instant matter, including without limitation:

a.     In 2002, the Connecticut Statewide Grievance Committee charged Carpenter, an attorney, with several violations of the Connecticut Rules of Professional Conduct based on allegations and findings that Carpenter had mismanaged and <u>converted</u> client funds as Chairman of one of Carpenter's many shell entities, Benistar Property Exchange Trust Co., Inc.;

b.      In 2004, a Massachusetts federal grand jury indicted Carpenter for the crime of mail and wire fraud as Chairman of another of Carpenter's shell companies, Benistar, Ltd., and Benistar, Ltd.'s several subsidiaries operating out of Simsbury, Connecticut, a small suburban town in Hartford County, population in or around 24,000;

c.      In 2005, the Connecticut Statewide Grievance Committee determined that Carpenter had committed severe dishonesty, fraud, deceit, and misrepresentation, which resulted in the Connecticut Supreme Court indefinitely suspending Carpenter from the privilege of practicing law in Connecticut;

d.      In 2005, a Massachusetts' jury convicted Carpenter of the crime of mail and wire fraud;

e.      In 2008, a Massachusetts' jury convicted Carpenter of the crime mail and wire fraud;

f.      In 2009, the Internal Revenue Service commenced a civil and criminal investigation into Nova, Carpenter, and Bursey, charging Nova, Carpenter and Bursey with the sale of fraudulent tax shelters; and

g.      In April 2010, Internal Revenue Service's investigation into Nova, Carpenter and Bursey resulted in a federal raid on Nova, Carpenter, and Bursey's office located at 100 Grist Mill Road, Simsbury, Connecticut (walking-distance from TD Bank's Simsbury, Connecticut branch, where its agents executed the fraud complained of herein).

12.      Notwithstanding the foregoing publicly-knowable litany of Carpenter's crimes and fiduciary breaches that lead to his indefinite suspension from the Connecticut Bar – all of which concern and/or relate to financial frauds and abuses of client trust funds – TD Bank,

through its agents in its branch office in Simsbury, Connecticut, made the decision to "look the other way" and in furtherance of its own interest rather than that of its client, TD Bank developed an extensive mutually beneficial business relationship with the Nova Group, and, as it occurs in small towns, a personal relationship with Carpenter and Bursey. For example, in 2009, TD Bank considered Carpenter one of its most valuable customers, inviting Carpenter to an exclusive dinner as a token of its appreciation of Carpenter's lucrative business (had, of course, on the backs of Carpenter's unfortunate trusting clients, as here).

13. All the while, Carpenter had, and continues to have, a publicly available criminal history consisting of financial crimes and frauds, just like the one at bar, that TD Bank, with knowledge that it was committing a fraud, facilitated to completion.

14. Upon information and belief, by May of 2009, when the Trust and TD Bank received the $30 million in life insurance proceeds from Lincoln, TD Bank knew of the information regarding the Nova Group's history of financial fraud, fraudulent banking practices, and Carpenter's suspension from the Connecticut Bar.

15. Pursuant to TD Bank's internal due diligence policies, various regulatory Know-Your-Customer ("KYC") rules, other federal and state banking laws, rules, and regulations, including the Bank Secrecy Act, 31 U.S.C. §§ 5311, *et seq.*, TD Bank performed due diligence on the Trust, Nova, Carpenter, and Bursey, but willfully ignored its due-diligence findings, neglecting its legal obligation not to approve the Nova Group's application to open a new account for the Trust.

16. TD Bank also knew that other banks had denied the Nova Group's application to open a new account for the Trust. Prior to opening an account for the Trust at TD Bank's Simsbury, Connecticut branch, Carpenter solicited several other banks, including U.S. Trust /

Bank of America ("BofA"). However, such banks' due diligence and KYC practices revealed obvious, publicly available indicia of fraud and/or such banks were otherwise unable to obtain information necessary to their respective due diligence investigations from Carpenter because Carpenter would not share said information. Accordingly, BofA and the other banks denied Nova Group's applications to open bank accounts for the Trust. BofA, for example, did not have the small-town ties that existed between Carpenter and TD Bank via TD Bank's agents at the Simsbury, Connecticut branch.

17.     Upon information and belief, based on its close relationship with Carpenter and the Nova Group, TD Bank assisted the Nova Group in looting the Trust in order for TD Bank to continue its lucrative business relationship with Carpenter, including Carpenter's (fulfilled) promise of millions of dollars in new deposits at TD Bank's Simsbury, Connecticut branch.

18.     As previously stated, in May of 2009, when TD Bank opened the Trust's account as a non-trust account, TD Bank knew – because both Lincoln and the Nova Group advised it – that the Trust's account was purposed solely toward depositing Trust assets.

19.     TD Bank subsequently opened numerous other bank accounts for Bursey and Carpenter, standing in the name of their numerous shell entities (the "Grist Mill Entities"), which the Nova Group appropriated to abscond with the Trust's assets – the $30 million in life insurance proceeds.

20.     Upon information and belief, Carpenter was a signatory on each account.

21.     In addition, each Grist Mill Entity's account application lists the same address, 100 Grist Mill Road, Simsbury, Connecticut (the "Grist Mill Property"), Carpenter's office.

22.     Carpenter owns the Grist Mill Property subject to a mortgage with TD Bank. The Grist Mill Property has served as the stated address of numerous companies under Carpenter's

control – including Benistar, Ltd. and its subsidiaries, which were the subject of the 2004 federal indictment against Carpenter. And, as stated above, the Grist Mill Property sits less than three quarters of a mile from TD Bank's Simsbury, Connecticut branch office.

23. TD Bank, with full and complete awareness that the $30 million it received from Lincoln were <u>trust</u> funds, it nonetheless authorized and executed on the Nova Group's behalf, the transfer of those trust funds from the Trust's account – known to be a trust account – to Grist Mill Capital's account with TD Bank, an account controlled by the Nova Group.

24. Next, TD Bank knowingly authorized and executed the Nova Group's requested transfer of the $30 million in trust funds to numerous other Nova-Group-controlled TD Bank accounts in various amounts, of course. These numerous transfers effected a shuffling of the Trust's funds between and among the several Grist Mill Entities' accounts (again, controlled by the Nova Group).

25. Upon information and belief, TD Bank even accepted mortgage payments on the Grist Mill Property – a TD Bank mortgage – from the Trust's assets, which TD Bank had previously fraudulently transferred from the Trust's account to the non-trust account controlled by the Nova Group for the benefit of TD Bank – not its client, the Trust.

26. Then, in June 2010, in the midst of arbitration proceedings between Universitas and Nova – the existence of which Universitas had previously advised TD Bank – through which Universitas demanded payment of the Trust assets to the Trust's assets' beneficiary, Universitas, TD Bank inexplicitly closed <u>all</u> of the accounts standing in the name of the Grist Mill Entities, controlled by the Nova Group.

27. With the closing of these shell-entity accounts, controlled by the Nova Group, standing in the name of the Grist Mill Entities, TD Bank transferred the remaining Trust assets –

not already spent by the Nova Group – out of the numerous Grist Mill Entities TD Bank accounts to certain Nova Group-controlled accounts at other financial institutions.

28.     As a result of TD Bank's and the Nova Group's illegal transfers, sadly, <u>none</u> of the more than $30 million in death benefits left to Universitas has been recovered from the Nova Group.

29.     TD Bank and its agents willfully ignored the Nova Group's well-known public history of fraudulent transactions and financial crimes and numerous red flags that the Nova Group was engaged in a criminal and fraudulent scheme using TD Bank's accounts when TD Bank agreed to open those numerous accounts for the Nova Group and Grist Mill Entities.  TD Bank's complicity in the Nova Group's fraudulent scheme is apparent from its actions, including:

    a.     In dealing with the Nova Group, TD Bank breached its duty to implement its internal control policies and to perform legally-required due diligence procedures – both of which serve to prevent money laundering, as here, and rather, allowed enormous, multi-million-dollar transfers and disbursements of known trust funds to non-trust accounts owned and controlled exclusively by known fraudsters (the Nova Group);

    b.     TD Bank was on notice that the Trust had commenced a lawsuit to collect the life insurance proceeds from Lincoln, for the benefit of Universitas,  but TD Bank did not care – TD Bank knowingly accepted the deposit of the life insurance proceeds, <u>which Lincoln had designated as trust funds</u>, into a non-trust account, in breach of TD Bank's (and generally, every banking institution's) internal policies;

    c.     TD Bank authorized and executed the transfer of Trust's assets from the Trust's account to the Nova Group's accounts, and allowed the Nova Group to shuffle

large amounts of those funds back and forth between the Grist Mill Entities' accounts so as to properly launder the funds and evade collection efforts by Universitas; and

      d.      TD Bank has refused full cooperation in providing requested information to Universitas regarding the Nova Group's financial transactions as well as TD Bank's participation in the Nova Group's fraud, despite being served with several post-judgment (explained in detail below) document subpoenas and a Rule 30(b)(6) deposition notice.

30.      Because TD Bank has refused to cooperate with Universitas' investigation into the Nova Group's fraud, the <u>full</u> extent of TD Bank's participation in effecting the Nova Group's fraudulent scheme is unknown, although, certainly, there is sufficient factual knowledge of TD Bank's participation in this fraud in order to commence this action.

31.      Universitas reserves its right to supplement its factual and legal allegations following discovery.

32.      Based on TD Bank's knowing and intentional partnership with the Nova group to accomplish this fraud on the Trust and Universitas – the Nova Group's financial fraud, conversion, and breach of fiduciary duty, TD Bank's violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), *et seq*., and TD Bank's unjust enrichment due to its acceptance of known trust funds in satisfaction of a personal debt of the Nova Group to TD Bank, as well as any and all fees and/or interest on loans or other financial products made with the use of the $30 million of the Trust's assets – Universitas seeks damages in an amount to be determined at trial, but no less than $30,181,880.30, plus interest, and such other and further relief as the Court deems just and proper.

**THE PARTIES**

33.     Plaintiff Universitas is a Delaware LLC organized to provide research and development of programs and businesses that support the mission and work of Destination Universitas Foundation.  Destination Universitas Foundation is a charitable foundation dedicated to promoting global philanthropy.

34.     Defendant TD Bank is a financial institution and National Association that operates or has operated under the trade name TD Banknorth, among others.  TD Bank is a bank holding company headquartered in Cherry Hill, New Jersey and Portland, Maine.  It is a wholly-owned subsidiary of TD Bank Financial Group, located in Toronto, Canada.

**JURISDICTION AND VENUE**

35.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (in that Plaintiffs have alleged claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), 1332, and 1367 (for claims arising under state common law).

36.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(d) because TD Bank is a corporation subject to personal jurisdiction in the Southern District of New York.

**FACTS APPLICABLE TO ALL CLAIMS**

37.     Plaintiff's claims arise from TD Bank's culpable participation in a fraudulent scheme by the Nova Group, accomplished through TB Bank.

**The Charter Oak Trust, the Nova Group, and the Grist Mill (Shell) Entities**

38.     On or about May 15, 2009, the Lincoln National Life Insurance Company ("Lincoln") issued two checks to the Charter Oak Trust ("Trust") totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Sash

A. Spencer ("Mr. Spencer"). Mr. Spencer, now deceased, named Plaintiff Universitas the sole, irrevocable beneficiary of the death benefits paid into the Trust. The Trust was required to pay over the insurance proceeds to Universitas.

39. The trustee, fiduciary, plan sponsor, and administrator of the Trust is and was Nova Group, Inc. ("Nova"). Nova's President was Wayne Bursey ("Bursey") and its Chairman was Daniel Carpenter ("Carpenter"). Carpenter is Bursey's brother-in-law.

40. Nova is and was located at 100 Grist Mill Road, Simsbury, Connecticut, a property owned by Carpenter (the "Grist Mill Property"). The Nova Group is also affiliated with related entities Benistar Admin. Services, Inc. ("BASI"), Grist Mill Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings"), Grist Mill Trust, Hanover Trust Company ("Hanover"), Moonstone Partners, LLC ("Moonstone"), and Phoenix Capital Management, LLC ("Phoenix") – all of which share the same address as Nova (collectively the "Grist Mill Entities").

41. Upon information and belief, each of the Grist Mill Entities was organized by Carpenter or Bursey or someone acting on their behalves as shell entities, having no assets (or negligible assets), no legitimate business, and no operations. Each of the Grist Mill Entities serves as an alter ego of the Nova Group and is controlled by the Nova Group.

**TD Bank and the Nova Group Scheme to Defraud Universitas and Convert Trust Funds**

42. On May 5, 2009, Bursey brought an action on behalf of the Trust against Lincoln to recover the life insurance proceeds under Mr. Spencer's two life insurance policies. In Bursey's complaint, he acknowledges that Universitas was the sole beneficiary of the $30 million in death benefits. *See Bursey v. Lincoln Nat. Life Ins. Co.*, No. 09-cv-735-AWT (D.

Conn. May 5, 2009), ECF No. 1. Lincoln paid out the death benefits to the Trust ten days later , on or about May 15, 2009.

43.    Rather than fulfilling its fiduciary obligations to Mr. Spencer, the Trust, and Universitas, the Nova Group (Carpenter and Bursey) refused to pay Universitas the more than $30 million in life insurance proceeds and improperly kept trust funds for itself (for Carpenter and Bursey). The Nova Group also improperly refused to disclose the location of the trust funds to Universitas. Such conduct constituted a breach of the Nova Group's contractual and fiduciary obligations to Universitas, conversion of Trust funds, and unjust enrichment.

44.    Unbeknownst to Universitas, contemporaneously with Nova's receipt of the $30 million from Lincoln on or about May 15, 2009, which it received from commencing a lawsuit against Lincoln, the Nova Group sought to open a new bank account for the Charter Oak Trust.

45.    Upon information and belief, the Nova Group sought to open the account with at least three major banking institutions besides TD Bank, but was declined by U.S. Trust / Bank of America ("BofA") due to the Nova Group's failure to satisfy BofA's due diligence protocols and policies, including its Know Your Customer policies.

46.    In connection with the Nova Group's application to open a new account, BofA sought basic information from Carpenter regarding all of the companies run out of 100 Grist Mill Road, Simsbury, Connecticut – Carpenter refused to provide any information on the basis that his companies were "private," that he does not provide such information to "anyone," offering (instead of BofA's requested information) his assertions that "we are trying to bring you business," "[w]e know all about 'know your client' rules," and "there are no terrorists allowed in the building" (100 Grist Mill Road).

47.     BofA further sought information regarding all of the companies Carpenter owned, operated, or directed, including their members and ownership interests, affiliates, and sources and uses of funds.  Carpenter failed to satisfy BofA's Know Your Client inquiries, and BofA declined to open the account, although Carpenter advised BofA through a series of e-mails that he was "trying to bring [BofA] business" and that he done "over TWENTY MILLION DOLLARS in wires" at a single BofA branch among the various accounts for which Carpenter was the signatory.  *Id*.

48.     Upon information and belief, TD Bank was aware that the Nova Group was shopping several banking institutions, including BofA, in order to find willing bank agents to assist their fraud, no questions asked, in exchange for the promise of millions of dollars in deposits.  TD Bank also knew that the Nova Group did not want to reveal anything to TD Bank about its business, the Nova Group's affiliates, or their operations.

49.     But for the willful assistance and participation of TD Bank, the Nova Group would have been unable to execute and complete their scheme to defraud Universitas and convert over $30 million in Trust funds.

**TD Bank  En ab les  and  Par ticip ates  in  the  Nov a  Grou p 's  Frau d u lent  S ch e me**

50.     On or about May 12, 2009, the Nova Group submitted an application to TD Bank to open an account for the Trust.  Dawn Foster, a TD Bank employee, received the application and opened the account in the name of "THE CHARTER OAK TRUST," an entity listed on the application as having an address at the Grist Mill Property and Wayne Bursey as the Trustee. Pursuant to its internal due diligence policies and Know Your Customer rules, TD Bank performed due diligence on the Trust and the Nova Group and discovered Bursey and the Trust's lawsuit to collect the life insurance proceeds from Lincoln <u>for the benefit of Universitas</u>.

51.     Nova received the two checks from Lincoln on or about May 15, 2009.  The checks were issued "PAY TO THE ORDER OF CHARTER OAK TRUST DTD 10/1/06 / WAYNE BURSEY TTEE / 100 GRIST MILL ROAD / SIMSBURY CT06070."

52.     On May 18, 2009, the Nova Group deposited the two checks into the Trust's account at TD Bank's Simsbury, Connecticut branch.  Upon information and belief, TD Bank, upon receipt of the two checks from Lincoln, recognized that the checks represented trust funds, and required Bursey to produce a copy of the October 1, 2006 trust document referenced on the checks.  Even so, TD Bank did not convert the convenience checking account to a trust account.

53.     On May 20, 2009, the Nova Group submitted an application to TD Bank to open a business checking account.  Carolyn M. Starr, a TD Bank employee, received the application and opened the account in the name of "NOVA GROUP INC."  The address for Nova on the account was 100 Grist Mill Road, Simsbury Connecticut.  The signatories on the account were Carpenter and Amanda Rossi.

54.     Between May 20 and May 21, 2009, the Nova Group opened several additional accounts standing in the names of the Grist Mill Entities, including Grist Mill Capital, Grist Mill Holdings, Hanover, Moonstone, and Phoenix.

55.     On or about May 21, 2009, TD Bank obtained from the Nova Group a copy of the Trust's Declaration of Trust ("Trust Document"), which named as the Trust's "sponsor" "NOVA GROUP, INC.," signed by Bursey as President of Nova.  TD Bank also knew that Carpenter was a manager of Nova because the day before, Carpenter opened a checking account for Nova, naming himself as a signatory on the account.

56.     Although TD Bank knew that the Trust account was a non-trust account, knew that the Nova Group was depositing trust funds from Lincoln into that non-trust account, knew

that Universitas was the beneficiary of the death benefits to be deposited into the Trust's account, and knew that Bursey and Carpenter controlled Nova, TD Bank accepted the Lincoln checks for deposit into the Trust's non-trust account.

**The Surreptitious Fraudulent Transfers**

57.     On May 21, 2009 (the same day that TD Bank received the Trust Document), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Capital in the amount of $8,677,276.75.

58.     On May 22, 2009 (the very next day), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Holdings in the amount of $2,100,000.00.

59.     On May 26, 2009 (four days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Capital in the amount of $2,186,566.00.

60.     In sum, over the course of four days, TD Bank aided the Nova Group in absconding with approximately $13 million – one-third of the Trust's assets, which assets were left to Universitas by Mr. Spencer so that Universitas could continue is charitable works – not to glut the coffers of Nova for the personal benefits of Carpenter and Bursey.

61.     On June 9, 2009 (two weeks later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits to a bank account at another banking institution standing in the name of Grist Mill Trust in the amount of $3,798,882.81.

62.     On June 12, 2009 (three days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from a Grist Mill Capital non-TD Bank account back into TD Bank, to the Nova Group-controlled TD Bank account standing in the name of Phoenix in the amount of $2.7 million.

63.     On July 11 and July 13, 2009 (one month later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from its TD Bank Phoenix account to its TD Bank Grist Mill Capital account in the amount of $2.5 million.

64.     On July 15, 2009 (two days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from its TD Bank Grist Mill Holdings account to another Nova Group-controlled TD Bank account standing in the name of Hanover, in the amount of $1.2 million.

65.     On July 15, 2009 (the same day), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from its TD Bank Hanover account to another Nova Group-controlled TD Bank account standing in the name of Moonstone in the amount of $1.1 million.

66.     On October 27, 2009 (three months later), TD Bank allowed Bursey to withdraw $19.8 million from the Trust account. To date, it is unknown to Universitas what became of the $19.8 million that TD Bank permitted Bursey to simply withdraw from the Trust account.

67.     In order to effect these multi-million-dollar transfers into, out of, between, and among the Nova Group-controlled TD Bank accounts, TD Bank's authorization was required. TD Bank signed off on each of these illegal transfers of Trust funds to one or more of the Grist Mill Entities. Because, among other things, TD Bank had only recently opened the accounts for

these Grist Mill Entities, its agents were well aware that these entities were controlled by the Nova Group and that the Nova Group was effectively diverting Trust funds to itself.

**Universitas Commences Arbitration Against the Nova Group – TD Bank Immediately Closes All of the Nova Group-Controlled TD Bank Accounts**

68.     On June 17, 2010, in light of the Nova Group's unlawful refusal to either turn over the life insurance proceeds from Lincoln or to disclose the proceeds' whereabouts, Universitas filed a demand for arbitration against the Nova Group.

69.     Within two weeks thereafter, TD Bank, quizzically, closed all of the Nova Group-controlled Grist Mill Entity bank accounts and turned over whatever Trust assets remained to the Nova Group or to entities under its control.

70.     On January 24, 2011 (six months later), Arbitrator Peter L. Altieri found Nova liable to Universitas and awarded damages to Universitas in the amount of $26,558,308.26, plus pre-judgment interest at the rate of ten percent.

71.     This Court then confirmed said award on June 5, 2012 and entered judgment for Universitas in the amount of $30,181,880.30. *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y. June 5, 2012), ECF No. 40. On October 5, 2012, this Court also granted Universitas an additional $268,810.01 in attorney's fees. *Id.* ECF No. 162.

72.     However, by the time Universitas obtained its judgment from the Court in 2012, because of TD Bank's willful assistance and encouragement to the Nova Group in their scheme to defraud Universitas, no portion of the life insurance proceeds remained in the Trust's TD Bank account or in any other account at TD Bank, because, as pleaded above, TD Bank closed all of these shell accounts and rendered whatever of the Trust's assets that remained in those accounts to the Nova Group within the same month that Universitas commenced arbitration against the Nova Group. Whatever portions of the Trust's assets that were not remaining at that

time was due to the fact that TD Bank had already aided and abetted the Nova Group is secreting and launders those funds beginning in 2009. And, of course, there is the $19.8 million cash withdrawal that Bursey made.

73. No part of the life insurance proceeds has been paid to Universitas.

**TD Bank Knew that the Nova Group was Looting the Trust at the Time that the Nova Group was Looting the Trust, but Refused to Act in Any Capacity Other Than on TD Bank's Own Behalf, for TD Bank's Own Illicit Benefit, to the Detriment of the Trust and <u>Its Beneficiary, Universitas</u>**

74. In aiding, abetting, and encouraging the Nova Group's fraud, TD Bank was fully aware that the Nova Group was using TD Bank as its instrument to loot the Trust's assets. In breach of its duties to the Trust and Universitas, TD Bank concealed its awareness of the unlawful conduct in order to maintain its lucrative business relationship with the Nova Group.

75. Pursuant to its internal due diligence policies and Know Your Customer rules and, as it was required to do under federal and state banking laws, rules, and regulations (including without limitation, the Bank Secrecy Act, 31 U.S.C. §§ 5311, et seq.), TD Bank investigated the Trust and the Nova Group prior to opening any accounts for the Nova Group or the Grist Mill Entities.

76. Upon information and belief, TD Bank's Simsbury agents were particularly familiar with the Grist Mill Entities, the Grist Mill Property, and the Nova Group (Carpenter and Bursey), specifically Carpenter, whose family homesteaded in Simsbury for several generations.

77. In connection with its investigation, its relationship with Carpenter and the Nova Group, and/or its observance of local news reports and largely-obtainable public records, TD Bank knew of the Nova Group's prior history of fraudulent conduct and financial fraud, including Carpenter's serial misappropriations of client funds. TD Bank's findings included that:

a. In <u>2002</u>, Carpenter, an attorney, was charged by the Connecticut Statewide Grievance Committee with several violations of the Connecticut Rules of Professional Conduct based on allegations that he had mismanaged and converted client funds as Chairman of Benistar Property Exchange Trust Co., Inc. *See Cahaly v. Carpenter*, Grievance Complaint No. 02-0600 (St. Grievance Cmte. Dec. 18, 2002);

b. In <u>2004</u>, Carpenter was named in multiple civil and criminal lawsuits arising out of his mishandling of client funds as the Chairman of Benistar, Ltd. and its subsidiaries, <u>each of which operated out of the Grist Mill Property address in Simsbury, Connecticut</u>. *See, e.g. United States v. Carpenter*, No. 04-CV-10029-GAO (D. Mass. 2004);

c. On January 14, <u>2005</u>, the Grievance Committee found that Carpenter had committed <u>severe dishonesty, fraud, deceit, and misrepresentation</u> in connection with his handling of client funds. *See* Decision, *Cahaly v. Carpenter*, Grievance Complaint No. 02-0600 (St. Grievance Cmte. Jan. 14, 2005). As with the matter at bar, Carpenter's misconduct described in the Decision involves the unauthorized transfer of client escrow funds from trust accounts into personal trading accounts. *Id.*;

d. In July of <u>2005</u>, Carpenter was found <u>guilty of mail fraud and wire fraud</u> by a jury. Ultimately, the judge set aside the verdict and allowed Carpenter to be retried. *See United States v. Carpenter*, No. 04-CR-10029 (D. Mass.), ECF No. 149.

e. On June 18, <u>2008</u>, a second jury found Carpenter <u>guilty of mail fraud and wire fraud</u>. *See United States v. Carpenter*, No. 04-CR-10029 (D. Mass.), ECF No. 285; 6/18/08 U.S. Attorney <u>Press Release</u>, "Benistar Chairman Convicted of Fraud" and 12/18/05 <u>Press Release</u>;

f.　In 2008, a civil action was brought against Carpenter and BASI for breach of fiduciary duty, misrepresentation, conversion, and breach of contract.  *See* Notice of Removal, Exhibit 1, *Iantosca v. Benistar Admin. Svcs., Inc.*, 08-cv-11785-NMG (D. Mass).  On December 9, 2008, Bursey was also joined as a Third Party Defendant in that action.

g.　In January 2009, six months prior to Carpenter's opening of several bank accounts with TD Bank in May 2009, Judge Aurigemma of the Connecticut Superior Court ordered the indefinite suspension of Carpenter from the practice of law.  *See Statewide Grivance v. Carpenter*, No. HHD-CV05-4013820-S (Sup. Ct. Jan. 6, 2009).

h.　On April 3, 2009, the IRS issued a summons to Bursey and Nova Benefit Plans LLC as part of an investigation into Bursey's and Nova's sale of fraudulent tax shelters.  *See* Petition, *USA v. Bursey*, 09 mc 272 (D. Conn. Aug. 18, 2009), ECF No. 1. The IRS then brought a civil action to enforce the Summons on August 18, 2009.  *Id.*; and

i.　On April 20, 2010, two months before TD Bank closed all of the Nova Group-controlled TD Bank accounts, the IRS raided the  Nova  G roup's  of fices  at  100 Grist Mill Road, Simsbury, Connecticut, less than a mile from TD Bank's Simsbury, Connecticut branch.  *See* Bursey Sur-Repl. 2, *USA v. Bursey*, 09 mc 272 (D. Conn. May 19, 2010), ECF No. 21.

78.　TD Bank willfully ignored numerous other badges of the Nova Group's history of financial fraud, including without limitation, that:

a.　Prior to soliciting TD Bank's assistance in looting the Trust and defrauding Universitas, the Nova Group solicited the services of various other banks,

including U.S. Trust / Bank of America, but these banks denied their services to the Nova Group for the glaringly obvious reason that the Nova Group was courting a co-conspirator as the instrument through which the Nova Group could accomplish fraud on the Trust;

b.     Upon information and belief, TD Bank's investigation revealed Carpenter's attempt to open these numerous accounts with other institutions in May 2009;

c.     The Nova Group opened numerous accounts for the Trust and the Grist Mill Entities within a one-month period, prior to receiving more than $30 million from Lincoln;

d.     The Nova Group was seeking to deposit the Trust funds into a non-trust account;

e.     Bursey and the Trust affirmed in the lawsuit against Lincoln (to release the death benefit) that all of the life insurance proceeds were intended for Universitas, but the Nova Group never transferred any funds to Universitas and instead proceeded to transfer all of the life insurance proceeds to its own accounts;

f.     The Trust account was looted quickly after the funds were received from Lincoln, primarily through three large, multi-million-dollar transfers from the Trust account to the Nova Group's accounts;

g.     All of the Grist Mill Entities shared the same address and were all purportedly located in the Grist Mill Property, which was located less than three quarters of a mile from TD Bank's Simsbury, Connecticut branch.  TD Bank also knew that

Carpenter owned the Grist Mill Property because TD Bank held a mortgage on the property;

h.      Upon information and belief, TD Bank accepted mortgage payments from the Nova Group and the Grist Mill Entities that can be easily traced back to the Trust, additional proof that TD Bank knew that it was accepting payment on personal debts out of funds that it knew were held in trust for Universitas;

i.      The Nova Group opened each and every one of the bank accounts to loot and launder the Trust's funds out of TD Bank's Simsbury, Connecticut branch;

j.      Although the Nova Group opened new accounts for the Grist Mill Entities, each and every one of the multi-million dollar deposits into these accounts sourced from the Trust – no funds initially deposited sourced from other institutions; and

k.      TD Bank shuffled funds back and forth between the Grist Mill Entities' accounts at the Nova Group's direction without any legitimate purpose, knowing that these entities were shell entities with no meaningful operations or assets (other than the Trust's assets).

**Derivative and Demand Futility Allegations**

79.     Universitas repeats and realleges each of the allegations made in paragraphs 1 through 78 of the Complaint as if fully stated herein.

80.     Universitas brings this action individually as a beneficiary of the Trust.

81.     Universitas also brings this action derivatively on behalf of the Trust in order to vindicate the rights of the Trust as against its banking institution, TD Bank.

82.     Universitas is not required to make any pre-suit demand upon the trustee of the Trust (Nova) because such demand would be a futile and useless action.  A pre-suit demand

upon the trustee of the Trust is excused because the trustee entity (Nova) is complicit in the fraudulent conduct effectuated by Nova's administrators (Carpenter and Bursey) and TD Bank. Accordingly, the trustee is interested in the outcome of this action and is *in pari delicto* with TD Bank.

83.     In addition, following the arbitration proceedings against Nova, Nova has not undertaken any actions as trustee, and both Bursey and Carpenter have averred that Nova currently has no assets.  In addition, Bursey and Carpenter have, when they have found it convenient to do so, denied that they are current officers of Nova or have any control over the trustee.  To be sure, on March 1, 2013, during oral argument before the Second Circuit, counsel for Nova and the Nova Group, Jack E. Robinson, Esq., represented that although he represents Nova, he does not know who the current officers of Nova are.

84.     Finally, even if Nova were to bring suit against TD Bank as trustee of the Trust, any recovery by the Trust from TD Bank would immediately be at risk of being converted by Bursey and Carpenter, or their affiliates.  Accordingly, the trustee Nova cannot fairly or adequately represent the interests of the Trust, which the trustee and its affiliates have repeatedly abused for their own personal gain.

### FIRST CLAIM FOR RELIEF
(Fraud/Misrepresentation)

85.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

86.     As the result of its investigation pursuant to its internal due diligence policies and Know Your Customer rules, TD Bank knew that the Nova Group had a long history of financial fraud and misconduct and that any financial transactions involving the Nova Group were necessarily subject to a high risk of fraud.

87.     TD Bank knowingly provided banking services to the Nova Group and created numerous accounts for the Grist Mill Entities, knowing that such entities and their accounts were fraudulent shell entities, and that by doing so, TD Bank was lending the appearance of legitimacy to otherwise illegitimate unlawful transfers and transactions conducted by the Nova Group.  TD Bank then concealed these indicia of fraud from the Trust, its client.

88.     In reliance upon TD Bank's affirmative misrepresentations and omissions regarding the Nova Group, the Trust recognized Nova as its trustee, allowed the Nova Group to act on behalf of the Trust, allowed Nova to receive funds from Lincoln on behalf of the Trust, and permitted Nova to manage the Trust's assets.

89.     By reason of the foregoing conduct, the Trust, and by extension Universitas, has been damaged, which damages are the natural and proximate consequence of TD Bank's false representations and omissions to the Trust regarding the Nova Group, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
(Aiding and Abetting Fraud / Misrepresentation)

90.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

91.     As the sole beneficiary of the life insurance proceeds paid by Lincoln into the Trust, Universitas alone had the right to immediate possession of more than $30 million in trust funds deposited with the Trust.

92.     The Nova Group unlawfully held itself out to the Trust and Universitas as a legitimate trustee, acting in a fiduciary capacity on behalf of the Trust, for the benefit of the Trust and the Trust's beneficiary Universitas.  The Nova Group further established numerous shell entities in order to create the appearance that the Nova Group had legitimate operations.

93.     In reliance upon the Nova Group's representations, the Trust and Universitas dealt with the Nova Group as a trustee of the Trust and allowed the Nova Group to collect death benefits from Lincoln on behalf of Universitas.  In reality, however, the Nova Group never intended to serve as a Trustee for the Trust, nor did it intend to distribute the Trust assets to Universitas.  The Nova Group used its status as the nominal trustee of the Trust in order to unlawfully obtain and then convert life insurance proceeds rightfully belonging to Universitas.

94.     TD Bank knowingly aided, abetted, and encouraged Nova Group's fraud and misrepresentation to the Trust and to Universitas by willfully assisting the Nova Group in converting the Trust assets and secreting trust assets, including without limitation, by opening a bank account for the Nova Group standing in the name of the Trust, providing banking services to the Nova Group and numerous shell entities created solely for the purpose of unlawfully diverting the Trust's assets, and concealing numerous red flags and other indicia of the Nova Group's fraud from the Trust and Universitas.

95.     By reason of the foregoing conduct, the Trust and Universitas have been damaged, which damages are the natural and proximate consequence of TD Bank's knowing aid and assistance in the Nova Group's fraud and misrepresentation, in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Aiding and Abetting Conversion)

96.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

97.     As the sole beneficiary of the life insurance proceeds paid by Lincoln into the Trust, Universitas alone had the right to immediate possession of more than $30 million in trust funds deposited with the Trust.

98.     The Nova Group, by unlawfully diverting the more than $30 million in trust funds to themselves and by retaining, dissipating, or wasting the same, deprived and continue to deprive Universitas of trust funds to which Universitas had a superior right and interest.  TD Bank's and the Nova Group's conduct has been willful and malicious and in reckless disregard of Universitas' property and legal rights.

99.     By willfully assisting the Nova Group in looting the Trust and defrauding the Trust and its beneficiary Universitas, including without limitation, by establishing bank accounts and providing banking services to the Nova Group in furtherance of their unlawful scheme.  TD Bank aided, abetted, and encouraged Nova Group's conversion of trust assets.

100.     By reason of the foregoing conduct, the Trust and Universitas have been damaged, which damages are the natural and proximate consequence of TD Bank's knowing aid and assistance in the Nova Group's conversion of trust funds, in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty/ Breach of Trust)

101.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

102.     TD Bank owed the Trust a fiduciary duty based upon, among other things, the trust and confidence the Trust placed in TD Bank as the Trust's depository institution.

103.     By willfully assisting the Nova Group in looting the Trust and defrauding the Trust and its beneficiary Universitas, TD Bank breached its fiduciary obligations to the Trust.

104.     By reason of the foregoing conduct, the Trust, and by extension its beneficiary Universitas, has been damaged, which damages are the natural and proximate consequence of TD Bank's breach of fiduciary duty, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
(Aiding and Abetting Breach of Fiduciary Duty/Breach of Trust)

105.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

106.    The Nova Group, as trustees of the Trust and of more than $30 million in trust funds for which Universitas was the sole beneficiary, owed the Trust and Universitas fiduciary duties.  The Nova Group breached these duties by, among other things, refusing to disclose the Trust's assets to Universitas, refusing to pay the Trust assets over to Universitas, converting over $30 million in the Trust assets, and attempting to secret trust funds from Universitas.

107.    By willfully assisting the Nova Group in looting the Trust and defrauding the Trust and its beneficiary Universitas, TD Bank aided, abetted, and encouraged Nova Group's breach of its fiduciary duties to the Trust and to Universitas.

108.    By reason of the foregoing conduct, the Trust and Universitas have been damaged, which damages are the natural and proximate consequence of TD Bank's knowing aid and assistance in the Nova Group's fiduciary breaches, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
(Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),
18 U.S.C. § 1962(c)

109.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

110.    Plaintiff's investigation of TD Bank's RICO violations is still in progress.  In addition, the nature of TD Bank's conduct and the information concerning its material and culpable knowledge is uniquely in possession of TD Bank and its accomplices, known and unknown, and the full extent of TD Bank's participation in the RICO violations will not be known absent further discovery.

111.     TD Bank and the Nova Group and their employees and agents, respectively, are each a "person" under the meaning of 18 U.S.C. §1961(3).

112.     TD Bank and the Nova Group and their employees and agents, together, constitute an association-in-fact "enterprise" within the meaning of 18 U.S.C. §1963(4).

113.     TD Bank and the Nova Group's continuous misrepresentations and omissions to Universitas and the Trust, and theft of the Trust's assets constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1963(5).

114.     TD Bank and the Nova Group effectuated the pattern of racketeering activity through predicate acts, including the unlawful use of the mails in interstate commerce in violation of 18 U.S.C. §1341 and/or the unlawful use of wires in interstate commerce in violation of 18 U.S.C. §1343.

115.     As a direct result of TD Bank's and the Nova Group's racketeering activity, Universitas and the Trust suffered substantial damages in an amount to be proven at trial.

116.     As a direct result of TD Bank's and the Nova Group's racketeering activity, TD Bank is required to satisfy treble damages, costs and attorneys' fees.  *See* 18 U.S.C. §1964(c).

## SEVENTH CLAIM FOR RELIEF
(Unjust Enrichment)

117.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

118.     By virtue of its participation in the Nova Group's fraudulent conduct, conversion, and breach of fiduciary duty, TD Bank has reaped ill gotten gains, including without limitation, wrongfully received payments, fees, and deductions from funds rightfully belonging to the Trust and Universitas.

119. Due to TD Bank's acceptance of the substantial deposits of the Trust assets by the Nova Group with in furtherance of the Nova Group's scheme to defraud the Trust and Universitas, and to convert the Trust's assets, TD Bank has wrongfully and inequitably enjoyed the use of over $30 million in deposits.

120. Accordingly, TD Bank has been unjustly enriched by its unlawful conduct at the expense of its client, the Trust, and Universitas its beneficiary, in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
(Grossly Negligent Training/Supervision, and/or Negligent Training/Supervision)

121. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

122. TD Bank has a duty to train and supervise its employees pursuant to federal and state banking laws, rules, and regulations in connection with said employees' opening of new accounts, trust accounts, and transfers into and out of T.D. Bank accounts, which duty flows from TD Bank's duty of ordinary care that TD Bank, as a bank, owes its customers.

123. The persons at the TD Bank Simsbury, Connecticut branch who authorized and/or executed the fraudulent conveyances of the Trust's funds on behalf of the Nova Group, or who otherwise aided or assisted in such conveyances, are employees of TD Bank and TD Bank employs and/or employed such persons during the time period relevant to this action.

124. Without limitation, at least as of the date of TD Bank's employees' transfer into and/or opening of the non-trust account on the Nova Group's behalf, into which the Trust's funds were deposited, TD Bank knew or should have known of such employees' propensity for reckless disregard of the rules and regulations, including TD Bank's own internal policies, that govern the opening of new accounts, trust accounts, and transfers of funds into and out of TD Bank accounts.

125. As set forth in detail *supra*, each wrongful conveyance of the Trust's funds was

authorized and executed by TD Bank employees, and such conveyances were made with TD Bank's property.

126.     TD Bank's negligence and/or gross negligence in its training and supervision of its employees proximately caused Plaintiff to lose the Trust's funds and Plaintiff has been injured thereby.

127.     Accordingly, because TD Bank breached its duty to properly train and/or supervise its employees with respect to the conduct alleged herein, and because said conduct directly caused Plaintiff's injuries, TD Bank is liable to Plaintiff in an amount to be determined at trial, believed to be not less than $30 million, plus punitive damages on the basis of TD Bank's gross negligence.

## NINTH CLAIM FOR RELIEF
### (Negligence and/or Gross Negligence)

128.     Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

129.     TD Bank, as a bank, owes a general duty of care to its customers.

130.     TD Bank knew that the Trust, as a trust, was TD Bank's customer.

131.     TD Bank further knew that Universitas was the Trust's sole and irrevocable beneficiary.

132.     Nonetheless, with this knowledge, TD Bank permitted and participated in the unlawful conveyances, detailed *supra*, that converted the Trust's funds to the detriment of the Trust and its known beneficiary, Universitas.

133.     Accordingly, TD Bank is liable to Plaintiff for damages in an amount to be determined at trial, but believed to be no less than $30 million, plus punitive damages due to TD Bank's grossly negligent conduct.

## TENTH CLAIM FOR RELIEF
(Grossly Negligent Hiring and/or Retention, and/or Negligent Hiring and/or Retention)

134.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendant the following.

135.    TD Bank has a duty to screen its employees and to hire only those candidates that are qualified, fit, and competent to perform their work, and to retain only those employees that remain qualified, fit, and competent to perform their work.

136.    TD Bank breached these duties in that TD Bank hired and/or retained employees at its Simsbury, Connecticut branch who were not qualified, fit, or competent to perform their work.

137.    Evidence of such employees' incompetence and/or unfitness include, without limitation, those employees' authorizations and executions of the fraudulent conveyances of the Trust's funds on behalf of the Nova Group, and accepting the Trust's funds, which TD Bank employees knew or should have known were designated solely to benefit Universitas, to pay Carpenter's personal debt to TD Bank.

138.    As a proximate result of TD Banks' breach of these duties, the Trust and its sole and irrevocable beneficiary, Universitas, have sustained injury in the form of the looting of the Trust's funds.

139.    Accordingly, TD Bank is liable to Plaintiff for this injury, in an amount to be determined at trial, but believed to be no less than $30 million.

## DEMAND FOR JURY TRIAL

140.    Plaintiff hereby demands a trial by jury.

Dated:  New York, New York          NAPOLI LAW PLLC
        July 24, 2015

By: /s/    Marie Napoli              

Marie Napoli, Esq.
1301 Avenue of the Americas, Tenth Floor
New York, New York 10019

*Attorneys for Plaintiff Universitas Education, LLC*