UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

UNIVERSITAS EDUCATION, LLC,     :
Individually and on behalf of the CHARTER     :
OAK TRUST,     :     Case No. 1:15-cv-05643 (SAS)
    :
              Plaintiff,     :
    :     **ORAL ARGUMENT**
        v.     :     **REQUESTED**
    :
TD BANK, N.A.     :
    :
            Defendants.     :
------------------------------------------------------------- X

## DEFENDANT TD BANK N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)

Jeffrey J. Chapman
Aaron F. Jaroff
*jchapman@mcguirewoods.com*
*ajaroff@mcguirewoods.com*
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
(212) 548-2100


*Attorneys for Defendant TD Bank, N.A.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

    A.    The Alleged Misappropriation and Plaintiff's Prior Proceedings
          Against The Nova Group. ........................................................... 2

    B.    The Allegations Against TD Bank.............................................. 3

ARGUMENT ....................................................................................................... 5

    I.    Plaintiff's Claims Are Time-Barred............................................. 6

        A.    Plaintiff's Negligence and Conversion Claims Are Subject To
            Three-Year Limitations Periods That Expired In 2012. .......................... 6

            1.    Negligence ................................................................... 6

            2.    Conversion .................................................................. 7

        B.    Plaintiff's Fraud and Aiding and Abetting Fraud Claims Are
            "Merely Incidental" to its Conversion Claim and Are Thus Time-
            Barred. ............................................................................. 8

        C.    Plaintiff's Fiduciary Duty Claims Are Subject To a Three-Year
            Limitations Period.................................................................. 11

        D.    Plaintiff's Unjust Enrichment Claim Is Time-Barred Under a
            Three-Year Limitations Period. ................................................ 12

        E.    Plaintiff's RICO Claim Is Subject To a Four-Year Limitations
            Period and Is Time-Barred...................................................... 13

    II.    Plaintiff Fails to State Any Actionable Claims.................................... 14

        A.    Plaintiff's RICO Claim Fails To Allege a Legally Sufficient
            "Enterprise" or TD Bank's "Participation"............................... 15

        B.    Plaintiff Has Failed To State a Claim for Fraud. ...................... 17

        C.    TD Bank Did Not Knowingly Aid or Provide Substantial
            Assistance to The Nova Group. ............................................... 19

            1.    Actual Knowledge ..................................................... 19

            2.    Substantial Assistance................................................ 20

        D.    TD Bank Had No Fiduciary Relationship With Plaintiff......................... 21

        E.    TD Bank Did Not Breach Its Duty of Ordinary Care. ............................ 23

        F.    TD Bank Was Not Unjustly Enriched. ................................... 24

CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.,*
    503 F. App'x 51 (2d Cir. 2012) ....................................................................24

*2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.,*
    816 F. Supp. 2d 222 (S.D.N.Y. 2011), *aff'd* 503 F. App'x 51 (2d. Cir. 2012)....................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................5

*Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.,*
    No. 01-cv-9649, 2005 WL 53271 (S.D.N.Y. Jan. 7, 2005) .......................8

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,*
    57 F.3d 146 (2d Cir. 1995)......................................................................23

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................5

*Ciccone v. Hersh,*
    530 F. Supp. 2d 574 (S.D.N.Y. 2008)....................................................11

*Coleman & Co. Sec., Inc. v. Giaquinto Family Tr.,*
    236 F. Supp. 2d 288 (S.D.N.Y. 2002) ................................................6, 7

*Corcoran v. New York Power Auth.,*
    202 F.3d 530 (2d Cir. 1999)..............................................................9, 10

*Cruz v. TD Bank, N.A.,*
    855 F. Supp. 2d 157 (S.D.N.Y. 2012)............................................ *passim*

*Curtis-Shanley v. Bank of Am.,*
    970 N.Y.S.2d 830 (NY. App. Div. 2013) ..........................................21, 22

*Fritzhand v. Discover Fin. Servs., Inc.,*
    800 N.Y.S.2d 316 (N.Y. Sup. Ct. 2005) .................................................6

*Gold Sun Shipping Ltd. v. Ionian Transp. Inc.,*
    666 N.Y.S.2d 677 (N.Y. App. Div. 1997) ...............................9, 10, 11, 12

*Golden Pac. Bancorp v. F.D.I.C.,*
    273 F.3d 509 (2d Cir. 2001)....................................................................13

*Handelsman v. Bedford Village Assocs. Ltd. P'ships,*
    213 F.3d 48 (2d Cir. 2000)......................................................................15

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) .......................................................................15, 17, 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)...................................................................................2

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    879 N.Y.S.2d 355 (N.Y. 2009) .....................................................................................11, 12

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998)................................................................................................11

*Indus. Bank of Latvia v. Baltic Fin. Corp.*,
    No. 93-cv-9032, 1994 WL 286162 (S.D.N.Y. June 27, 1994) .............................................16

*Interallianz Bank AG v. Nycal Corp.*,
    No. 93-cv-5024, 1994 WL 177745 (S.D.N.Y. May 6, 1994) ..........................................15, 16

*Kapernekas v. Brandhorst*,
    638 F. Supp. 2d 426 (S.D.N.Y. 2009)............................................................................12, 13

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009).........................................................................7, 19, 21

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..........................................................................................13, 14

*Kottler v. Deutsche Bank AG*,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009)...................................................................................8

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)................................................................................................19

*Lewin v. Richard Avedon Foundation*,
    No. 11-cv-8767, 2015 WL 3948824 (S.D.N.Y. June 26, 2015) ...........................................12

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007)........................................................................8, 12, 13

*Mariano v. Fiorvante*,
    989 N.Y.S.2d 55 (N.Y. App. Div. 2014) ...............................................................................7

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
    693 F. Supp. 2d 387 (S.D.N.Y. 2010)........................................................................ *passim*

*Midwest Mem'l Group, LLC v. Int'l Fund Servs. (Ireland) Ltd.*,
    No. 10-cv-8660, 2011 WL 4916407 (S.D.N.Y. Oct. 17, 2011)....................................6, 8, 10

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
261 F.R.D. 13 (S.D.N.Y. 2009) ...................................................................21, 22, 23

*Papapietro v. Popular Mortg. Servicing Co.*,
No. 13-cv-2433, 2014 WL 5824682 (E.D.N.Y. Nov. 10, 2014) .............................14

*Playford v. Phelps Mem'l Hosp. Center*,
680 N.Y.S.2d 267 (N.Y. App. Div. 1998) ..............................................................6

*Powers Mercantile Corp. v. Feinberg*,
490 N.Y.S.2d 190 (N.Y. App. Div. 1985) .........................................................8, 9

*Renner v. Chase Manhattan Bank, N.A.*,
85 F. App'x 782 (2d. Cir. 2004) ........................................................................19

*Renner v. Chase Manhattan Bank*,
No. 98-cv-926, 2000 WL 781081 (S.D.N.Y. June 16, 2000), *aff'd* 85 F. App'x 782
(2d. Cir. 2004)..................................................................................................18

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007).......................................................... *passim*

*Rosner v. Bank of China*,
No. 06-cv-13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x
637 (2d Cir. 2009)........................................................................................20, 21

*Rotella v. Wood*,
528 U.S. 549 (2000)...........................................................................................13

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000).................................................................................2

*Ryan v. Hunton & Williams*,
No. 99-cv-5938, 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .......................20, 21

*Schmidt v. Fleet Bank*,
No. 96-cv-5030, 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) ........................15, 16, 18

*Schultz v. Boy Scouts of Am., Inc.*,
491 N.Y.S.2d 90 (N.Y. 1985) ...........................................................................15

*Silverman Partners, L.P. v. First Bank*,
687 F. Supp. 2d 269 (E.D.N.Y. 2010) ...................................................20, 23, 24, 25

*Spinale v. Tenzer Greenblatt, LLP*,
765 N.Y.S.2d 786 (N.Y. App. Div. 2003) ...........................................................12

*Stuart v. Am. Cyanamid Co.,*
    158 F.3d 622 (2d Cir. 1998) ........................................................................6

*Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso,*
    637 N.Y.S.2d 342 (N.Y. 1995) ....................................................................7

## STATUTES

18 U.S.C. § 1962(c) ..............................................................................................15

## RULES

FED. R. CIV. P. 8 ....................................................................................................16

FED. R. CIV. P. 9(b) ..................................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ...................................................................................1, 2, 5

N.Y. C.P.L.R. § 213(1) .........................................................................................12

N.Y. C.P.L.R. § 213(8) ...........................................................................................8

N.Y. C.P.L.R. § 214(3) ...........................................................................................7

N.Y. C.P.L.R. § 214(4) ...........................................................................................6

Defendant TD Bank, N.A. ("TD Bank") respectfully moves to dismiss the Amended Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this case, Universitas Education, LLC ("Plaintiff" or "Universitas")[1] seeks to recover $30 million in life insurance proceeds it claims was stolen in 2009 by its trustee, Nova Group, Inc. (the "Trustee" and together with Wayne Bursey and Daniel Carpenter, the "Nova Group"). Indeed, Universitas obtained an arbitration award for the stolen life insurance proceeds against the Nova Group and has been attempting to collect it for over three years. *See* Am. Compl. ¶ 68, 70-71. Now, nearly *six years* after Universitas became aware of the conversion by the Nova Group, Universitas is attempting to sue TD Bank to recover what the wrongdoers have been unable or unwilling to pay. The claims in question (a federal RICO claim and various common law fraud, conversion, breach of fiduciary duty, negligence, and unjust enrichment allegations) are all based essentially on two factual predicates: (1) TD Bank, when properly instructed by the Trustee, executed certain routine banking transactions and (2) TD Bank, based on its due diligence procedures, knew or should have known that the Nova Group and its principals would steal the $30 million and should have thwarted the theft. For each claim, Plaintiff seeks to recover the $30 million that it is actually owed by the Nova Group. Am. Compl. ¶ 32.

Plaintiff's attempt to find a deep pocket to recover its missing life insurance proceeds must fail, as the Amended Complaint suffers from numerous fatal flaws that cannot be cured:

- Plaintiff's claims are time-barred. Plaintiff's conversion and negligence claims are governed by three-year limitations periods which expired no later than October 2012.

- Plaintiff's fraud, breach of fiduciary duty, and unjust enrichment claims are all incidental to Plaintiff's conversion claim, meaning that they are also subject to the

---

[1] Unless otherwise noted, capitalized terms are as defined in Plaintiff's First Amended Complaint, filed July 24, 2015 (the "Amended Complaint"). ECF No. 5.

same limitations period and are untimely.

- The RICO claim is governed by a four-year limitations period that began to run when Plaintiff had actual or inquiry notice of its injury. Plaintiff's own filings plainly state that it had actual notice of its injury by October 2009, making its claim barred by October 2013.

- Each of Plaintiff's claims also fail on their merits, as Plaintiff has not sufficiently stated a claim for relief under New York or federal law. TD Bank did not owe Plaintiff a heightened fiduciary duty of care, did not breach any duty of ordinary care, and Plaintiff has failed to identify with particularity any misstatement made by TD Bank – let alone that TD Bank acted with the requisite intent to defraud.

- Plaintiff has failed to demonstrate that TD Bank aided and abetted the Nova Group by acting with actual knowledge of the underlying wrongdoing and substantially assisting in the Nova Group's commission of the wrong. Plaintiff's pleading suggests at most a vague suspicion about one Nova Group-related individual and the execution of routine banking transactions, which are insufficient to establish aiding and abetting liability as a matter of law.

- Plaintiff has not alleged that TD Bank was part of a legally sufficient RICO enterprise or that it directed the operation or management of the enterprise.

These are fatal defects that cannot be cured by amendments, particularly as Plaintiff has already obtained third-party discovery from TD Bank. Plaintiff's belated and insufficient attempt to involve TD Bank in its fight with the Nova Group should be dismissed with prejudice.

## STATEMENT OF FACTS[2]

### A. The Alleged Misappropriation and Plaintiff's Prior Proceedings Against The Nova Group.

Universitas was the sole beneficiary of $30 million in life insurance proceeds payable upon the death of Sash A. Spencer. Am. Compl. ¶ 38. Mr. Spencer provided that the life insurance proceeds would be paid into the Charter Oak Trust ("Charter Oak"), and he selected

---

[2]    In examining a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents referenced in a complaint, documents "integral" to the complaint, even if not specifically attached or incorporated by reference, and items subject to judicial notice, such as public records and Plaintiff's filings in other lawsuits. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003).

Nova Group, Inc. to act as trustee. Am. Compl. ¶ 38-39. On May 5, 2009, after the death of Mr. Spencer, Bursey, an officer of the Trustee, commenced an action to recover the proceeds of the life insurance policies. Am. Compl. ¶ 42. However, after receiving the proceeds, the Trustee refused to pay Universitas, instead keeping the funds for itself. Am. Compl. ¶ 43. Universitas, aware that it had not received the proceeds to which it was entitled, demanded payment from the Trustee by at least October 2009. *See* Ex.[3] 1 ¶ 7. Universitas then filed for arbitration against the Nova Group in June 2010 (the "2010 Arbitration Proceeding"). Am. Compl. ¶ 68. In January 2011, the arbitrator determined that the Nova Group had misappropriated the funds and Universitas brought suit seeking to confirm and enforce the award (the "2011 Enforcement Proceeding"). Am. Compl. ¶ 70-71; *see also* Ex. 1. In June 2012, Judge Swain confirmed the award and entered judgment in favor of Plaintiff. Am. Compl. ¶ 71.

### B.  The Allegations Against TD Bank.

Having apparently failed to collect its judgment against the individuals and entities responsible, Plaintiff now attempts to recover from TD Bank an amount equivalent to what it is actually owed by the Nova Group. *See* Am. Compl. ¶ 32. The sole basis for involving TD Bank in this dispute is that the Trustee and individuals related to the Nova Group opened one or more checking accounts at TD Bank. Specifically, in May 2009 Bursey, acting for the Trustee, opened a "convenience checking account," a form of traditional demand deposit account, at a TD Bank branch in Simsbury, Connecticut for Charter Oak (the "Charter Oak Account"), into which it deposited the insurance proceeds. Am. Compl. ¶¶ 18, 50-52. There are no allegations that TD Bank was asked, or agreed, to serve as a trustee or fiduciary in connection with the Charter Oak Account. In other words, this was a basic checking account and Charter Oak was no different

---

[3]     All references to "Ex. [ ]" are to the exhibits to the Declaration of Jeffery J. Chapman submitted herewith.

from the thousands of other customers that TD Bank serves. Ex. 2. Nor are there allegations that Carpenter was a signatory for the Charter Oak Account. Am. Compl. ¶¶ 19-20; *see also* Ex. 2 (not listing Carpenter as a Charter Oak signatory). Stripped of rhetoric and conclusory statements, the Amended Complaint alleges that in connection with opening the Charter Oak Account, TD Bank performed due diligence that caused it to discover, or should have caused it to discover, Carpenter's history of allegedly fraudulent behavior, and that this should have warned TD Bank of the possibility that Bursey and the Trustee would later conspire with Carpenter to defraud Universitas. Am. Compl. ¶¶ 15-16, 75-77.

Beginning in May 2009, shortly after the Charter Oak account was opened and the insurance proceeds deposited, the Amended Complaint alleges that the Trustee, via Bursey, authorized a number of withdrawals and transfers from the Charter Oak Account to other accounts inside and outside of TD Bank, including some controlled by Carpenter, the result of which was that the insurance proceeds were transferred out of the Charter Oak Account by October 2009. Am. Compl. ¶¶ 57-67. Tellingly, there are no allegations that Bursey or the Trustee were not authorized to effectuate these transfers and withdrawals based on the terms of the Charter Oak Trust or the relevant account documents. Further, there are no well-pled factual allegations stating that the transfers were suspicious at the time of execution; indeed, it is only with the benefit of hindsight and years of judicial proceedings that Universitas can now allege that they were "illegal." *Id.* TD Bank's involvement ended in June 2010, when it closed the Charter Oak Account and other accounts related to the Nova Group. Am. Compl. ¶¶ 26, 68-69.

TD Bank and Universitas subsequently entered into an agreement suspending the running of any applicable statutes of limitations from February 11, 2014 through July 16, 2015 (the "Tolling Agreement"). Ex. 3 ¶ 1. The Tolling Agreement expressly states that it "shall not

revive any claim that is time barred as of the [February 11, 2014] Effective Date." *Id.* ¶ 3. On July 17, 2015 Plaintiff filed its original complaint in this action, followed by the Amended Complaint on July 24, 2015, which TD now moves to dismiss with prejudice.

## **ARGUMENT**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pled factual allegations are to be accepted, but a complaint cannot rely on mere conclusory statements and legal conclusions, which are not "entitled to the assumption of truth." *Id.* at 679-80. A complaint is insufficient to state a claim where it is supported only by "naked assertions devoid of further factual enhancement" which fail to establish that a defendant is liable for the alleged conduct. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Finally, any factual allegations cited as the basis for a plaintiff's claim "must be enough to raise a right to relief about the speculative level." *Twombly*, 550 U.S. at 555.

Where, as here, a plaintiff alleges claims of fraud, Rule 9(b) of the Federal Rules of Civil Procedure mandates that the complaint state "with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The heightened standard requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 176 (S.D.N.Y. 2012) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)) (granting TD Bank's motion to dismiss customers' common law fraud, conversion, breach of fiduciary duty, and unjust enrichment claims).

# I.   Plaintiff's Claims Are Time-Barred.

In diversity cases, New York federal courts apply New York's statutes of limitations to state law claims, even in instances where the injury at issue might have occurred outside of the state. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626-27 (2d Cir. 1998). It is clear under New York law that each of Plaintiff's claims are barred by the applicable statute of limitations.

## A.   Plaintiff's Negligence and Conversion Claims Are Subject To Three-Year Limitations Periods That Expired In 2012.

### 1.   Negligence

New York applies a three-year limitations period for claims sounding in negligence, including those for negligent hiring and supervision. *See* N.Y. C.P.L.R. § 214(4); *Coleman & Co. Sec., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 299, 303 (S.D.N.Y. 2002). The limitations period for negligence claims "commences to run on the date of the *occurrence of the injury*, not on the date when it was discovered." *Playford v. Phelps Mem'l Hosp. Center*, 680 N.Y.S.2d 267, 268 (N.Y. App. Div. 1998) (emphasis added). New York "does not apply a 'discovery rule' to extend accrual" of negligence claims until one has all the information necessary to proceed with a claim. *Midwest Mem'l Group, LLC v. Int'l Fund Servs. (Ireland) Ltd.*, No. 10-cv-8660, 2011 WL 4916407, at *3 (S.D.N.Y. Oct. 17, 2011); *see also Fritzhand v. Discover Fin. Servs., Inc.*, 800 N.Y.S.2d 316, 319 (N.Y. Sup. Ct. 2005) (the New York limitations period for negligence and recklessness begins to run at the time liability has arisen "even though the injured party may be ignorant of the existence of the wrong or injury") (citations and quotations omitted).

Under this standard, Plaintiff's claims are barred. The Amended Complaint states Plaintiff was injured at least as of October 2009, when the funds were fully withdrawn from TD Bank and when the Trustee refused Plaintiff's demand for the insurance proceeds. Am. Compl.

¶ 66; Ex. 1 ¶ 7; *see also Coleman*, 236 F. Supp. 2d at 303 (negligence claims accrued on the dates of alleged injury and such injury took place when the money-losing transactions at issue occurred). Indeed, when specifically discussing its negligence claims, Plaintiff admits that it was injured when the "wrongful" and "unlawful conveyances" of the insurance proceeds occurred. *See* Am. Compl. ¶¶ 124-26, 132-33, 137-38. Because the latest possible injury Plaintiff sustained reasonably attributed to TD Bank occurred in October 2009, Plaintiff's negligence claims thus expired in October 2012, well prior to the execution of the Tolling Agreement. *See Mariano v. Fiorvante*, 989 N.Y.S.2d 55, 57 (N.Y. App. Div. 2014) (affirming dismissal of an action commenced "more than three years after any alleged negligence had been committed").

### 2. Conversion

Like negligence claims, allegations of conversion are subject to a three-year limitations period that begins to run on the date that the alleged conversion occurs, not when it was or should have been discovered. *See* N.Y. C.P.L.R. § 214(3); *Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso*, 637 N.Y.S.2d 342, 347 (N.Y. 1995) (holding that "[f]or statute of limitations purposes, an action for conversion . . . [is] subject to a three-year limitation period" and that "accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover") (citations omitted). Claims for aiding and abetting conversion are governed by the same statute of limitations as the underlying tort. *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010).

A conversion occurs when one exercises unauthorized dominion over the property of another to the exclusion of the rights of the lawful owner. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009). Plaintiff admitted in the 2011 Enforcement Proceeding that the alleged conversion by the Trustee occurred no later than October 2009, when it refused Universitas' initial demand to remit the proceeds, thus denying its rightful access to the funds.

Ex. 1 ¶ 7; *see Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01-cv-9649, 2005 WL 53271, at *6 (S.D.N.Y. Jan. 7, 2005) (noting it is "hornbook law" that the refusal to surrender goods to their rightful owner upon the owner's demand constitutes a conversion). Thus, Plaintiff's conversion claim was time-barred as of October 2012, over one year prior to the entry of the Tolling Agreement.

**B.      Plaintiff's Fraud and Aiding and Abetting Fraud Claims Are "Merely Incidental" to its Conversion Claim and are Thus Time-Barred.**

Claims for fraud and aiding and abetting fraud are normally governed by New York's six-year limitations period. N.Y. C.P.L.R. § 213(8); *see also Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009). However, where, as here, "a plaintiff brings both fraud and conversion claims . . . New York courts will not apply the longer limitation if the *fraud claim is merely incidental to that for conversion.*" *Marketxt*, 693 F. Supp. 2d at 394 (emphasis added); *see also Midwest Mem'l*, 2011 WL 4916407, at *4-6 (applying the three-year limitations period for conversion to a claim of aiding and abetting fraud where "Plaintiff's claims center[ed] on allegations of theft rather than deception"); *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 663 (S.D.N.Y. 2007) ("[A] Court will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."); *Powers Mercantile Corp. v. Feinberg*, 490 N.Y.S.2d 190, 192 (N.Y. App. Div. 1985) ("It is . . . a well-established principle of law that where an allegation of fraud is not essential to the cause of action pleaded except as an answer to an anticipated defense of statute of limitations, courts look for the reality, and the essence of the action and not its mere name.") (quotation omitted).

A combined fraud and conversion action such as this is subject to the six-year limitations period "only when: (1) the fraud occurred *separately* from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are *distinct* from the

injuries caused by the alternate claim." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999) (emphasis added). Additionally, courts will look to the independent viability of the fraud claim and the relief that is sought, finding "fraud claims incidental where the measure of the requested relief is the same for both types of claims and seems to take its substance from the non-fraud claim." *Marketxt*, 693 F. Supp. 2d at 395; *see also Gold Sun Shipping Ltd. v. Ionian Transp. Inc.*, 666 N.Y.S.2d 677, 678 (N.Y. App. Div. 1997) (holding that claims for fraud and breach of fiduciary duty were properly dismissed pursuant to the conversion limitations period "because the legal remedy for conversion would have afforded the plaintiffs full and complete relief"); *Powers Mercantile*, 490 N.Y.S.2d at 192-93.

Under this controlling authority, Plaintiff's fraud and aiding and abetting fraud claims are merely incidental to its true claim for conversion. The gravamen of the complaint has always been that the Trustee and the Nova Group converted the life insurance proceeds belonging to Plaintiff. *See, e.g.*, Am. Compl. ¶2 (noting that the conduct of the Trustee "effectuated the unlawful conversion of the life insurance proceeds" and that TD Bank provided assistance "to accomplish this conversion"); *id.* ¶6 (stating that the Nova Group intended to "convert the Trust assets – and did convert the Trust assets – by nefariously transferring the death benefits from the Trust to multiple TD Bank accounts under the Nova Group's control"). Plaintiff admits in the Amended Complaint that the relief it seeks for fraud and aiding and abetting fraud is identical to that sought for all of its claims, including aiding and abetting conversion – monetary damages reflecting the purported loss of the insurance proceeds. Am. Compl. ¶ 32. Indeed, the paragraphs describing the requested damages for fraud, aiding and abetting fraud, and aiding and abetting conversion are practically carbon copies of one another. *See* Am. Compl. ¶¶ 89, 95, 100. Based on these admissions, the legal remedy for Plaintiff's aiding and abetting conversion

claim alone would afford it "full and complete relief," making its fraud allegations nothing more than an obvious attempt to avoid the fact that its conversion claim is time-barred. *See Gold Sun*, 666 N.Y.S.2d at 678; *see also Midwest Mem'l*, 2011 WL 4916407, at *5 (three-year conversion limitations period applied to fraud claims where plaintiff did "not allege that it suffered damages *distinct* from the conversions") (emphasis added); *Marketxt*, 693F. Supp. 2d at 396 (applying a three-year conversion limitations period to fraud allegations where plaintiff sought "precisely the same damages on each of its . . . theories of liability").

Moreover, Plaintiff cannot show that the alleged fraud occurred separately from and subsequent to the injury that forms the basis of its aiding and abetting conversion claim, nor that the alleged injuries resulting from the three causes of action are in any way distinct. *See Corcoran*, 202 F.3d at 545. Plaintiff's claims relate only to a single injury – the conversion of the life insurance proceeds to which it was entitled. In support of its fraud claim, Plaintiff states that TD Bank's "affirmative misrepresentations and omissions regarding the Nova Group" caused it to recognize Nova Group, Inc. as the Charter Oak trustee, resulting in the misappropriation of the insurance proceeds. Am. Compl. ¶¶ 88-89. This is identical to the injury alleged in connection with its aiding and abetting conversion claim – that TD's willful assistance aided the Nova Group's misappropriation. *Compare* Am. Compl. ¶ 94 (alleging that TD Bank "willfully assist[ed] the Nova Group in *converting* the Trust assets" in support of its aiding and abetting fraud claim) (emphasis added) *with* Am. Compl. ¶ 99 (alleging that TD Bank "aided, abetted, and encouraged Nova Group's *conversion* of trust assets" by "willfully assisting the Nova Group in looting the Trust" in support of its conversion claim) (emphasis added).

Because Plaintiff has alleged causes of action for fraud and aiding and abetting fraud that are "merely incidental" to its true claim for conversion, the shorter limitations period applicable

to conversion claims apply. *See Marketxt*, 693 F. Supp. 2d at 396 ("But for the alleged conversions, plaintiff could not make out an underlying primary violation on which to base its allegations of secondary liability regarding the defendants. As a result, plaintiff's case rises or falls with its conversion claims."); *Gold Sun*, 666 N.Y.S.2d at 678 ("Since the cause of action alleging fraud was merely incidental to the conversion cause of action, and the only purpose it serves in the complaint is to avoid the Statute of Limitations, the cause of action alleging fraud was properly dismissed.") (citations omitted). As explained above, Plaintiff's conversion claims expired no later than October 2012, mandating that its fraud and aiding and abetting fraud claims be dismissed as well.

### C. Plaintiff's Fiduciary Duty Claims Are Subject to a Three-Year Limitations Period.

New York does not prescribe a statute of limitations for claims of breach of fiduciary duty or aiding and abetting a breach of fiduciary duty; rather, the applicable period depends on the substantive remedy sought. *See Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998)); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 879 N.Y.S.2d 355, 359 (N.Y. 2009). Where, as here, a plaintiff seeks only the legal remedy of damages, *see* Am. Compl. ¶ 32, New York courts view the action as one alleging an injury to property and apply a three-year limitations period. *See Indep. Order*, 157 F.3d at 942.("[A] breach of fiduciary duty claim seeking money damages . . . has been held subject to [the] three-year statute.").

While claims for breach of fiduciary duty based on allegations of fraud can be subject to a six-year limitations period, this longer limitations period will not apply where the fraud claims are merely incidental to claims with shorter statutes of limitations. *See Marketxt*, 693 F. Supp. 2d at 398 (noting that because plaintiff's underlying fraud claims were incidental to its

conversion claims, the gravamen of breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims was also conversion); *Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428-29 (S.D.N.Y. 2009); *Gold Sun*, 666 N.Y.S.2d at 678; *see also IDT Corp.*, 879 N.Y.S.2d at 359 (a six-year fraud limitations period applies to breach of fiduciary duty claims only where the allegation of fraud is "essential"). As explained, Plaintiff's fraud claims are merely incidental to its underlying claim for conversion, making its fiduciary duty claims subject to a three-year limitations period. *See Marketxt*, 693 F. Supp. 2d at 398 ("Because plaintiff's breach of fiduciary duty claims are grounded in conversion rather than fraud, they are subject to the shorter three-year statute of limitations and are time-barred."). For the same reason discussed in Section I.A.2, *supra*, Plaintiff's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims accrued by October 2009, when the conversion occurred, making them time-barred by October 2012. *See* Ex. 1 ¶ 7.

### D. Plaintiff's Unjust Enrichment Claim Is Time-Barred Under a Three-Year Limitations Period.

Plaintiff's claim for unjust enrichment is also untimely under New York law. Claims for unjust enrichment are generally governed by a six-year limitations period. *See* N.Y. C.P.L.R. § 213(1); *Malmsteen*, 447 F. Supp. 2d at 667. However, much like claims for fraud and breach of fiduciary duty, if an unjust enrichment claim is merely incidental to or duplicative of a claim with a shorter limitations period, "the Court will not allow a plaintiff to avail himself of the longer limitations period." *Malmsteen*, 447 F. Supp. 2d at 667; *Lewin v. Richard Avedon Foundation*, No. 11-cv-8767, 2015 WL 3948824, at *9 n.6 (S.D.N.Y. June 26, 2015); *see also Spinale v. Tenzer Greenblatt, LLP*, 765 N.Y.S.2d 786, 786-87 (N.Y. App. Div. 2003) (dismissing unjust enrichment claims under a three-year statute of limitations).

Here, Plaintiff's conclusory allegation of unjust enrichment is no more than an

afterthought added to the Amended Complaint in an attempt to circumvent the otherwise applicable statutes of limitations. Indeed, as explained in greater detail below, Plaintiff does not successfully allege that TD Bank was enriched or that any enrichment occurred at Plaintiff's expense. *See infra* Section II.F. Plaintiff cannot take advantage of the six-year limitations period merely by adding conclusory allegations in support of its unjust enrichment claim based only on the same facts that underlie its claim of conversion. *See Kapernekas,* 638 F. Supp. 2d at 428-29 (finding that plaintiff's unjust enrichment claim was based on identical allegations to its true claim of conversion and was therefore subject to the same three-year limitations period); *Malmsteen,* 477 F. Supp. 2d at 667-68.

In New York, "[t]he statute of limitations for a claim of unjust enrichment begins to run upon the occurrence of the wrongful act giving rise to a duty of restitution." *Golden Pac. Bancorp v. F.D.I.C.,* 273 F.3d 509, 520 (2d Cir. 2001) (quotation omitted). According to the Amended Complaint, the last possible alleged wrongful act giving rise to a duty of restitution by TD Bank was permitting the Trustee to withdraw the life insurance proceeds from the Charter Oak Account in October 2009. Am. Compl. ¶¶ 57-66. From the face of the Amended Complaint, Plaintiff's claim for unjust enrichment was time-barred by October 2012.

### E. Plaintiff's RICO Claim Is Subject To a Four-Year Limitations Period and Is Time-Barred.

Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood,* 528 U.S. 549, 552 (2000). The four-year period "accrues upon the discovery of the *injury alone.*" *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 150 (2d Cir. 2012) (emphasis added). The first step in a RICO statute of limitations analysis "is to determine when the plaintiff sustained the alleged injury." *Id.* A court must then determine when the plaintiff "discovered or should have discovered the injury and begin[] the four-year statute of limitations period at that point." *Id.* at

13

150-51 (quotation omitted). Where, as here, "a RICO plaintiff does begin or has begun to inquire once the duty arises, the Court must determine when a reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence, and the statute of limitations begins to run on that date." *Id.* at 153.

Plaintiff admitted in pleadings filed before Judge Swain that it had actual notice of its injury by October 2009. During the 2011 Enforcement Proceeding, Plaintiff stated that the "Nova Group formally rejected [its] claim to the [insurance proceeds] twice, initially in October 2009, and on appeal in February 2010." Ex. 1 ¶ 7. Thus, at the same time Plaintiff alleges that the funds were being withdrawn from the Charter Oak Account, Plaintiff itself was investigating why it had not yet received payment, and was fully aware that the Trustee did not intend to remit the insurance proceeds. Indeed, it is likely that Plaintiff had actual notice of its injury prior to even October 2009, as it represented that "[a]fter the life insurance carrier paid out $30 million in insurance proceeds to the Plan in May 2009, Nova Group refused to pay Universitas . . . and insisted it was entitled to keep the sum for itself." *Id.* This provided Plaintiff with clear, actual notice of its injury. *See Papapietro v. Popular Mortg. Servicing Co.*, No. 13-cv-2433, 2014 WL 5824682, at *7 (E.D.N.Y. Nov. 10, 2014) (holding that a plaintiff had actual notice of its injury when it wrote letters to state authorities complaining of said injuries). Notwithstanding the fact that the merits of Plaintiff's RICO claim also fail, *see infra* Section II.A, the claim itself is simply not timely because it had actual knowledge of its injury by at least October 2009, meaning that its RICO claim expired in October 2013.

## II.     Plaintiff Fails to State Any Actionable Claims.

Although the Court need not proceed with an examination of the merits of Plaintiff's claims, should the Court determine that this action is timely, the Amended Complaint must still

be dismissed with prejudice because Plaintiff has not stated any actionable claims under New York or federal law.[4]

### A. Plaintiff's RICO Claim Fails To Allege a Legally Sufficient "Enterprise" or TD Bank's "Participation."

In order to successfully allege a RICO violation under 18 U.S.C. § 1962(c), Plaintiff must demonstrate that it "was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Schmidt v. Fleet Bank*, No. 96-cv-5030, 1998 WL 47827, at *7 (S.D.N.Y. Feb. 4, 1998) (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)). Courts hold that "a defendant is liable under § 1962(c) only if it has participated in the conduct of the enterprise's affairs, not just its own affairs[,] that is, participated in the operation or management of the enterprise itself." *Interallianz Bank AG v. Nycal Corp.*, No. 93-cv-5024, 1994 WL 177745, at *7 (S.D.N.Y. May 6, 1994) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 182-85 (1993)); *see also Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) ("[A]n alleged RICO defendant must have had some part in directing the operation or management of the enterprise itself to be liable.") (quoting *Reves*, 507 U.S. at 179); *In re Agape Litig.*, 681 F. Supp. 2d 352, 369 (E.D.N.Y. 2010).

Plaintiff's allegations fall well short of this standard. Its RICO claim appears to be limited to conclusory statements that TD had a "knowing and intentional partnership" with the

---

[4]    Plaintiff is silent as to whether its claims are governed by New York or Connecticut law. Under New York's choice of law rules, the law of the state where a plaintiff's injuries occur govern the claims at issue. *See Schultz v. Boy Scouts of Am., Inc.*, 491 N.Y.S.2d 90, 93-94 (N.Y. 1985). Although Plaintiff has not alleged where it is located, aside from being a Delaware limited liability company, *see* Am. Compl. ¶ 33, in the 2011 Enforcement Proceeding, Plaintiff stated that its members reside and are domiciled in New York and that it has no contacts with Connecticut. *See* Ex. 1 ¶ 1, Ex. 4 ¶¶ 2-5. As such, TD Bank believes that the alleged injuries to Plaintiff occurred in New York and that New York law governs. *Cf. Handelsman v. Bedford Village Assocs. Ltd. P'ships*, 213 F.3d 48, 51-52 (2d Cir. 2000) (a limited liability company has the citizenship of its members).

Nova Group and that it "effectuated [a] pattern of racketeering activity through predicate acts." Am. Compl. ¶¶ 32, 114. This is simply not sufficient to meet the specificity requirements of Rule 9(b), nor even the more lenient pleading requirements of Rule 8.[5] First, it is well-settled that a bank and its customer do not create a legally sufficient enterprise. *See Schmidt*, 1998 WL 47827, at *8 ("[P]laintiffs have offered no authority for the counterintuitive proposition that a RICO enterprise can consist of a bank and its customers.") (citing *Cullen v. Paine Webber Group*, 689 F. Supp. 269, 273 (S.D.N.Y. 1988)). Second, even if TD Bank and the Nova Group could be deemed an enterprise for RICO purposes, Plaintiff has not alleged that TD Bank participated in or directed the operation or management of the enterprise. Plaintiff appears to claim that TD Bank participated in the alleged enterprise by providing banking services and permitting the Trustee to withdraw the insurance proceeds from the Charter Oak Account. However, "[r]egardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise." *Rosner*, 528 F. Supp. 2d at 431 (dismissing a RICO claim where the sole allegation of participation in the enterprise was that the defendant "provided banking services") (citing *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)). Courts in New York have long held that this provision of normal banking services simply does not give rise to participation in, or the direction of, a RICO enterprise. *See Indus. Bank of Latvia v. Baltic Fin. Corp.*, No. 93-cv-9032, 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) ("That [defendant bank] provided banking services – even with knowledge of the fraud – is not enough to state a claim under § 1962(c)."); *Interallianz Bank*, 1994 WL 177745, at *7 (dismissing a RICO § 1962(c) claim where defendant

---

[5]      Plaintiff has also failed to submit the RICO Statement required by Section V.C of the Court's Individual Rules and Procedures, and as such the only allegations supporting its RICO claim are those included in the Amended Complaint.

bank was not alleged to have "engaged in any activities beyond conducting its own banking business by financing transactions and managing customer accounts"). Further, Plaintiff makes no allegation that TD Bank exercised any control or influence over the Nova Group. *See In re Agape*, 681 F. Supp. 2d at 369-70 (dismissing RICO claims against defendant bank where there was "no allegation that [the bank] recommended certain courses of fraudulent behavior" or "an allegation that [the bank] had the power to influence" the wrongdoers, and that "[e]ven if the Court assumes that [the bank] consciously ignored the fraud or provided important services to aid in its commission, this would still be insufficient to show that [the bank] directed or operated" the scheme).

It is clear that Plaintiff has not sufficiently pled that TD Bank participated in a RICO enterprise, or even if it did, that it directed the enterprise's operation or management, mandating that its RICO claim be dismissed.

**B.      Plaintiff Has Failed to State a Claim for Fraud.**

In order to state a claim for fraud, Plaintiff must demonstrate that TD Bank made "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Cruz*, 855 F. Supp. 2d at 176 (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). In addition to complying with the particularity requirements of Rule 9(b), Plaintiff must also "provide facts giving rise to a strong inference of fraudulent intent . . . by (1) alleging facts to show that [a] defendant[] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quotations omitted).

Here, Plaintiff does not even approach this heightened standard. Indeed, the only true support in the Amended Complaint for its fraud claim appears to be an allegation that TD Bank made unidentified misrepresentations and omissions regarding the Nova Group, causing Charter Oak to recognize Nova Group, Inc. as the trustee, thus permitting it to misappropriate the funds. *See* Am. Compl. ¶ 88. This conclusory allegation fails even the most basic requirement of Rule 9(b) in that it does not identify an allegedly fraudulent statement, much less a speaker or when it was made. *See Cruz*, 855 F. Supp. 2d at 176. Even if TD Bank is found to have made a representation upon which Plaintiff relied regarding the legitimacy of the Nova Group, Inc. as trustee for Charter Oak, Plaintiff has not pled facts sufficient to show that TD Bank knew that such representation was false or that it had the requisite intent. First, Plaintiff admits that Nova Group, Inc. "is and was" the trustee of Charter Oak, Am. Compl. ¶ 39. Second, Plaintiff has not shown that TD Bank had the motive and opportunity to commit fraud. At most, Plaintiff alleges that TD Bank had a motive to preserve the fees from the checking accounts it held for Nova Group-related entities. *See* Am. Compl. ¶¶ 12, 17. However, this is simply insufficient to rise to the level of an intent to defraud. *See Renner v. Chase Manhattan Bank*, No. 98-cv-926, 2000 WL 781081, at *13 (S.D.N.Y. June 16, 2000) ("Plaintiff must allege more than [defendant bank's] interest in bank fees and deposits in order to create a reasonable inference of fraudulent intent."), *aff'd* 85 F. App'x 782 (2d. Cir. 2004); *Schmidt*, 1998 WL 47827, at *6.

Plaintiff's failure to approach these most basic elements required for pleading a fraud claim underscores the fact that its one true cause of action is for aiding and abetting conversion, and that its other claims were pled simply to avoid the applicable statutes of limitation.

**C.     TD Bank Did Not Knowingly Aid or Provide Substantial Assistance to The Nova Group.**

Plaintiff brings three claims of aiding and abetting liability against TD Bank, alleging that it aided and abetted the Nova Group's fraud, conversion, and breach of fiduciary duty. In order to state a claim for aiding and abetting any tort (including a breach of fiduciary duty, conversion, and fraud), a plaintiff must show: (i) a primary violation; (ii) actual knowledge of the violation on the part of the aider or abettor; and (iii) substantial assistance to advance the underlying wrong. *See Renner v. Chase Manhattan Bank, N.A.*, 85 F. App'x 782, 784 (2d. Cir. 2004); *Kirschner*, 648 F. Supp. 2d at 533 (noting that the elements of aiding and abetting a breach of fiduciary duty, conversion, and fraud are substantially similar under New York law). Additionally, allegations of aiding and abetting fraud must meet the heightened pleading requirements of Rule 9(b). *Lerner*, 459 F.3d at 292-93. Even assuming that Plaintiff has alleged a primary violation, its aiding and abetting claims must be dismissed because Plaintiff has failed to show that TD Bank had actual knowledge of the underlying wrong or substantially assisted in its commission.

**1.     Actual Knowledge**

Nothing less than actual knowledge of the underlying wrong at the time of the substantial assistance is required. *See Renner*, 85 F. App'x At 784 ("As to the knowledge requirement [of an aiding and abetting claim], New York courts require that the alleged abettor have *actual* knowledge of the primary wrong.") (emphasis in original); *Rosner*, 528 F. Supp. 2d at 426 ("Thus, actual, not constructive, knowledge is required to impose liability on an aider and abettor") (citing *Lerner*, 459 F.3d at 292). In the Amended Complaint, Plaintiff alleges that TD Bank was aware of the underlying Nova Group scheme because (i) it knew from a review of public records allegedly undertaken in connection with its due diligence procedures that Bursey,

Carpenter, and the Nova Group had a history of fraudulent conduct and (ii) it "willfully ignored" other indicia of the Nova Group's fraud. *See* Am. Compl. ¶¶ 77-78.

These facts do not support a plausible inference of actual knowledge. The mere fact that a principal of the Trustee, Bursey, and a tangentially related individual, Carpenter, had previously committed wrongdoing does not show that TD Bank knew that the Trustee would steal the $30 million from Universitas. Moreover, the types of evidence cited by Plaintiff at best only establish that TD Bank had constructive, not actual, knowledge of the underlying wrong. *See Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010) (dismissing aiding and abetting fraud, conversion, and breach of fiduciary duty claims because allegations that multiple wire transfers between accounts controlled by the same individual, even if viewed as "raising 'red flags,' [were] not sufficient to give rise to a strong inference of actual knowledge"); *Rosner*, 528 F. Supp. 2d at 426 (allegations of knowledge based on public documents and wire transfer activity established at most constructive knowledge, which is "insufficient" to support an allegation of actual knowledge); *Ryan v. Hunton & Williams*, No. 99-cv-5938, 2000 WL 1375265, at *8-9 (E.D.N.Y. Sept. 20, 2000).

### 2. Substantial Assistance

Plaintiff has not shown that TD Bank substantially assisted in the conversion. A defendant will be found to have substantially assisted in the underlying wrong only when it "affirmatively assists, helps conceal or fails to act when required to do so." *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 237 (S.D.N.Y. 2011) (quoting *Lerner*, 459 F.3d at 295), *aff'd* 503 F. App'x 51 (2d Cir. 2012); *Rosner v. Bank of China*, No. 06-cv-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009). Plaintiff appears to allege only that TD Bank assisted by "opening" or "establishing" bank accounts for the Trustee, "providing banking services," and approving

wire transfers. *See* Am. Compl. ¶¶ 94, 99, 107. New York law is clear that this normal banking activity does not rise to the level of substantial assistance.[6] *See Rosner*, 2008 WL 5416380, at *12 ("[T]he mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance.") (quotation omitted); *see also In re Agape*, 681 F. Supp. 2d at 365 ("The caselaw is clear that opening accounts and approving transfers, even where there is suspicion of fraudulent activity, does not amount to substantial assistance."); *Ryan*, 2000 WL 1375265, at *9 ("The affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance.").

### D.   TD Bank Had No Fiduciary Relationship With Plaintiff.

Plaintiff's claim that TD Bank breached a fiduciary duty fails because TD Bank was not in a fiduciary relationship with either Universitas or the derivative plaintiff Charter Oak.  To state a claim for breach of fiduciary duty, "a plaintiff must demonstrate both a fiduciary relationship between the parties and a breach of the duty implied in connection with such a relationship." *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009).  A fiduciary relationship arises "when one person is under a duty to act for or to give advice for the benefit of another upon matters *within the scope of the relation*." *Kirschner*, 648 F. Supp. 2d at 534 (emphasis in original) (quotation omitted).  In New York, "the relationship between a bank and its customer is not a fiduciary one, but rather one of creditor and debtor." *Curtis-Shanley v. Bank of Am.*, 970 N.Y.S.2d 830, 832 (NY. App. Div. 2013); *see also Cruz*, 855 F. Supp. 2d at 175-76 ("New York law is clear that the usual relationship of bank and

---

[6]     The Amended Complaint could be read to suggest that TD Bank substantially assisted the conversion by allegedly failing to follow its internal know-your-customer guidelines. *See* Am. Compl. ¶¶ 15, 29(a).  However, failing to follow internal bank regulations is also insufficient to establish substantial assistance. *See Rosner*, 528 F. Supp. 2d at 427.

customer is that of debtor and creditor. A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former.") (quotations omitted). Thus, TD Bank owed no heightened duty to either Universitas, which was not a customer of TD Bank, or Charter Oak, which had a depository relationship with TD. *See Musalli*, 261 F.R.D. at 26 (dismissing a breach of fiduciary duty claim because "banks do not owe fiduciary duties either to non-customers or even to customers in a deposit or lending relationship").

The Amended Complaint appears to contain only two allegations regarding the purported fiduciary relationship between TD Bank and Charter Oak. Plaintiff initially states – with no support – that Charter Oak was "TD Bank's own client to which it owed fiduciary duties" and later alleges that "TD Bank owed [Charter Oak] a fiduciary duty based upon, among other things, the trust and confidence [Charter Oak] placed in TD Bank as [its] depository institution." Am. Compl. ¶¶ 2, 102. As an initial matter, the Amended Complaint admits that TD Bank and Charter Oak shared only a depository relationship via an ordinary checking account, an admission sufficient on its face to dismiss Plaintiff's breach of fiduciary duty claim. *Id.* ¶¶ 52, 102; *see Curtis-Shanley*, 970 N.Y.S.2d at 832 ("[P]laintiff's argument that his status as a depositor created a fiduciary duty is unsupported by law."). Moreover, even if Charter Oak believed that it had a fiduciary relationship with TD, this is insufficient to create a fiduciary duty unless TD Bank expressly accepted such a relationship. *See Musalli*, 261 F.R.D. at 26 ("[U]nilateral trust or confidence does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well.") (quotation omitted). Plaintiff has done nothing more than nakedly assert that TD Bank owed a fiduciary duty to Charter Oak without even providing the bare minimum of evidence as to why the Court should break from the rule that banks are not

in fiduciary relationships with their customers.[7] *See Cruz*, 855 F. Supp. 2d at 176 ("Without facts indicating their relationship with [defendant bank] exceeded that of debtor and creditor, plaintiffs cannot state a claim of breach of fiduciary duty under New York law.").

### E.      TD Bank Did Not Breach Its Duty of Ordinary Care.

Plaintiff's claims for negligence fail because TD Bank has not breached any duty of care that it owed to Plaintiff. At most, TD Bank owed Plaintiff a duty of ordinary care. *See supra* Section II.D; *cf. Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 158 (2d Cir. 1995) ("Generally, banking relationships are not viewed as special relationships giving rise to a heightened duty of care."). Plaintiff's negligence claims can all be traced to the same underlying alleged conduct – that it was negligent in allowing the Trustee to misappropriate the insurance proceeds.[8] *See* Am. Compl. ¶¶ 125-27, 132, 137-38. However, with respect to Universitas, which was not and is not alleged to be a customer of TD Bank, the law is clear that "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." *Musalli*, 261 F.R.D. at 27 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005)).

Plaintiff also cannot demonstrate that TD Bank breached any duty of care owed to its customer Charter Oak. Even in instances where a trust has set up an account as a customer of a bank, the Second Circuit has made clear that, when an account is maintained by a trustee "[t]he

---

[7]      While a fiduciary relationship may arise between a bank and its customer under "unusual circumstances," in order to take advantage of this exception, a customer must show "a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding or an assumption of control or responsibility." *Cruz*, 855 F. Supp. 2d at 176 (quoting *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993)).

[8]      Plaintiff also appears to base its negligence claim on an alleged breach of TD Bank's "duty to implement its internal control policies and to perform legally-required due diligence procedures" such as know-your-customer investigations. Am. Compl. ¶ 29(a). However, the law is clear that such regulations "cannot form the basis for a negligence claim." *See Silverman Partners*, 687 F. Supp. 2d at 282.

bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust." *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 503 F. App'x 51, 54 (2d Cir. 2012) (quoting *Lerner*, 459 F.3d at 287). This is because "[i]t is well settled that a depository bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *Id.* To hold otherwise would "create a duty of care that essentially makes banks trustees of every trust with which they do business," something that "New York courts will not [impose] as a matter of policy." *Id.* at 53-54 (citing *Lauer v. City of New York*, 711 N.Y.S.2d 112 (N.Y. Ct. App. 2000)) (also noting that any argument for a higher standard of care is even less persuasive where a "bank was only asked to open a typical bank account for [a t]rust").

Ultimately, Plaintiff claims that TD Bank should have conducted a more thorough investigation, determined that Universitas would be a victim of fraud, and acted to protect it. But those affirmative duties are not present in an ordinary banking relationship such as this. As a result, TD Bank did not breach any duty of care that it owed to Charter Oak and Plaintiff's negligence claims must be dismissed. *See id.* at 54 (finding that the defendant bank did not act negligently where it had reason to believe that transactions effected by a named trustee were "valid and authorized by the [t]rust").

**F.    TD Bank Was Not Unjustly Enriched.**

To state a claim for unjust enrichment, Plaintiff must show that (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) circumstances are such that in equity and good conscience the defendant should return the funds. *Silverman Partners*, 687 F. Supp. 2d at 280 (quoting *Golden Pac.*, 273 F.3d at 519). In support of its claim, Plaintiff states only that by virtue of its aiding and abetting the underlying conversion, TD Bank wrongfully received "payments, fees, and deductions" and "enjoyed the use of over $30 million." Am.

Compl. ¶¶ 118-19. Despite these conclusory allegations, "where a valid contract governs the obligations between parties, no claim for unjust enrichment will stand." *Silverman Partners*, 687 F. Supp. 2d at 280 (citing *In re First Central Fin. Corp.*, 377 F.3d 209, 214 n.4 (2d Cir. 2004)); *see also Cruz*, 855 F. Supp. 2d at 177. There is no dispute that Charter Oak entered into a valid banking contract with TD Bank, thus barring Plaintiff's unjust enrichment claim. *See* Am. Compl. ¶¶50-52; *Cruz*, 855 F. Supp. 2d at 178 ("A checking account creates a contractual debtor-creditor relationship between the parties.") (quotation omitted).

Moreover, Plaintiff has not demonstrated (i) that TD Bank was enriched at its expense or (ii) even if TD Bank were enriched, that equity demands a return of such enrichment. Plaintiff has only alleged that TD Bank was "enriched" in the course of conducting normal banking activities. *See Silverman Partners*, 687 F. Supp. 2d at 280-81 (dismissing claim of unjust enrichment based on an allegation of enrichment by fees and interest). Further, Plaintiff offers nothing to suggest that equity and good conscience demand a return of its alleged property beyond the conclusory assertion that TD Bank "wrongfully and inequitably" benefited from the deposit of the insurance proceeds and was thus "unjustly enriched." Am. Compl. ¶¶ 119-20. This is simply insufficient to state a claim for relief. *See Cruz*, 855 F. Supp. 2d at 178 (dismissing an unjust enrichment claim where plaintiff asserted "only that it would be inequitable for [defendant bank] to retain any proceeds derived from its conduct").

## CONCLUSION

For the foregoing reasons, TD Bank respectfully requests that the Amended Complaint be dismissed in its entirety, with prejudice. Dismissal should be with prejudice as Plaintiff has already amended its complaint once and has taken discovery by subpoena from TD Bank in the 2011 Enforcement Proceeding. Further, it is clear that TD Bank has pointed to fundamental defects that cannot be cured by repleading.

Dated: New York, New York
September 11, 2015

By: _Jeffrey J. Chapman (JC1813)_
Jeffrey J. Chapman          (JC1813)
Aaron F. Jaroff
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
*jchapman@mcguirewoods.com*
*ajaroff@mcguirewoods.com*

*Attorneys for Defendant TD Bank, N.A.*