UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                   :

UNIVERSITAS EDUCATION, LLC,      :
individually and on behalf of the CHARTER   :
OAK TRUST,                    :      Case No.  15-cv-05643 (SAS)
                                   :

             Plaintiff,        :
                                   :

           v.                :
                                   :

T.D. BANK, N.A.,               :
                                   :

            Defendant.     :
-------------------------------------------------------- X

**PLAINTIFF UNIVERSITAS EDUCATION, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT TD BANK N.A.'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OF
THE FEDERAL RULES OF CIVIL PROCEDURE**

Paul J. Napoli
Annie E. Causey
*pnapoli@napolilaw.com*
*acausey@napolilaw.com*
NAPOLI SHKOLNIK PLLC
1301 Avenue of the Americas, 10th Floor
New York, New York 10019
(212) 397-1000

*Attorneys for Plaintiff Universitas Education, LLC,
Individually and on behalf of the Charter Oak Trust*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................................1

FACTUAL BACKGROUND ...............................................................................................................2

    I.    TD'S KNOWLEDGE AND CONDUCT AT THE TIME OF ACCOUNT
        OPENING ................................................................................................................................2

    II.   TD'S KNOWLEDGE AND CONDUCT AFTER THE TIME OF ACCOUNT
        OPENING ................................................................................................................................4

    III.  UNIVERSITAS' KNOWLEDGE OF TD'S MISCONDUCT ........................................7

ARGUMENT ........................................................................................................................................9

    I.    UNIVERSITAS HAS STATED A DIRECT AND/OR AN AIDING AND
        ABETTING CLAIM AGAINST TD BANK FOR BREACH OF FIDUCIARY,
        OR IN THE ALTERNATIVE, ORDINARY DUTY. ....................................................9

    II.   UNIVERSITAS HAS STATED A DIRECT AND AN AIDING AND
        ABETTING FRAUD CLAIM AGAINST TD BANK. ..................................................11

    III.  UNIVERSITAS HAS STATED AN AIDING AND ABETTING CONVERSION
        CLAIM AGAINST TD BANK. .........................................................................................12

    IV.  UNIVERSITAS HAS STATED A NEGLIGENCE CLAIM AGAINST TD
        BANK. .....................................................................................................................................13

    V.   UNIVERSITAS HAS STATED A CLAIM AGAINST TD BANK FOR
        VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
        ORGANIZATIONS ACT. .................................................................................................14

    VI.  UNIVERSITAS HAS STATED AN UNJUST ENRICHMENT CLAIM
        AGAINST TD BANK. ........................................................................................................15

    VII. UNIVERSITAS' CLAIMS ARE TIMELY .................................................................16

CONCLUSION ...................................................................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Bischoff ex rel. Schneider v. Yorkville Bank*,
    218 N.Y. 106, 112 N.E. 759 (1916)................................................................11, 12

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
    490 F. Supp.2d 536 (S.D.N.Y. 2007)..............................................................14

*Childers v. New York & Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014) ...............................................................21

*Clarke v. Pub. Nat'l Bank & Trust Co. of N.Y.*,
    259 N.Y. 285, 181 N.E. 574 (1932).................................................................12

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Svs.*, Inc.,
    271 F.3d 374 (2d Cir.2001)..............................................................................17

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir.1992)..............................................................................15

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir.1995)................................................................................10

*Grace ex rel. Fox v. Corn Exch. Bank Trust Co.*,
    287 N.Y. 94, 38 N.E.2d 449 (1941).................................................................11

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    17 F.Supp.2d 275 (S.D.N.Y.1998) ..................................................................19

*IIT, an Int'l Inv. Trust v. Cornfeld*,
    619 F.2d 909 (2d Cir.1980)..............................................................................14

*In re Knox*,
    64 N.Y.2d 434, 477 N.E.2d 448, 488 N.Y.S.2d 146 (1985)............................12

*In re Sharp Int'l Corp.*,
    403 F.3d 43, 49 (2d Cir.2005)..........................................................................10

*JP Morgan Chase Bank v. Winnick*,
    406 F.Supp.2d 247 (S.D.N.Y.2005) ................................................................13

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (2003) ..............................................10, 11

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)............................................................................19

*Kermanshah v. Kermanshah*,
    580 F. Supp. 2d 247 (S.D.N.Y. Aug. 11, 2008)..............................................20

*Kolbeck v. LIT America, Inc.*,
    939 F.Supp. 240 (S.D.N.Y.1996) ....................................................................13

*Lerner v. Fleet Bank*, N.A.,
    459 F.3d 273 (2d Cir.2006)........................................................................14, 16

*Levin v. Kitsis,*
    920 N.Y.S.2d 131 (2d Dep't 2012) ............................................................................. 19

*Moss v. Morgan Stanley Inc.,*
    719 F.2d 5 (2d Cir.1983) ........................................................................................... 18

*Norwest Mortgage, Inc. v. Dime Sav. Bank of N.Y.,*
    280 A.D.2d 653, 721 N.Y.S.2d 94 (2d Dep't 2001) ........................................... 11, 12

*SEC v. Lee,*
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................................... 20

*Solomon ex rel. Solomon v. City of New York,*
    66 N.Y.2d 1026, 499 N.Y.S.2d 392 (1985) .............................................................. 16

*Staron v. McDonald's Corp.,*
    51 F.3d 353 (2d Cir.1995) ......................................................................................... 10

*U.S. Bancorp Equip. Fin., Inc. v. Rubashkin,*
    30 Misc.3d 1216(A), 2011 WL 293716 (Sup.Ct.2011) ............................................ 14

*United States v. Turkette,*
    452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ............................................ 18

*Universitas Educ., LLC v. Nova Group, Inc.,*
    No. 11-cv-1590-LTS (S.D.N.Y. June 5, 2012) ........................................................... 8

*Wechsler v. Bowman,*
    285 N.Y. 284, 34 N.E.2d 322 (1941) ........................................................................ 10

## STATUTES

18 U.S.C § 1962 ................................................................................................................... 17

18 U.S.C § 1962(c) ............................................................................................................... 17

18 U.S.C. § 1961(4) .............................................................................................................. 17

18 U.S.C. § 1964(c) .............................................................................................................. 17

C.P.L.R. § 213(8) .................................................................................................................. 19

Plaintiff Universitas Education, LLC, individually and on behalf of the Charter Oak Trust ("Universitas") respectfully submits this memorandum of law in opposition to Defendant TD Bank, N.A.'s ("TD") motion to dismiss Plaintiff's First Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

TD's motion to dismiss asks the Court to disregard the allegations of the Complaint, to rely on TD's mischaracterization of the facts in the Complaint, and to depart from binding Second Circuit precedent that requires dismissal of TD's motion. TD argues that Universitas' claims are untimely, intentionally confusing the appropriate statutes of limitation applicable to Universitas' claims, alleging that all of Universitas' claims are incidental to its aiding and abetting conversion claim, and are therefore all subject to a three-year limitations period.

TD is wrong in this regard for several reasons, including that Universitas had adequately alleged facts that support its other claims, facts that go well beyond those necessary for its aiding and abetting conversion claim. And, where the discovery rule is appropriate to toll certain of Universitas' claims, TD misapprehends the appropriate date upon which those claims began to accrue. Tellingly, TD belies all of its positions in this regard through its assertion that "indeed, it is only with the benefit of hindsight and years of judicial proceedings that Universitas can now allege that [TD's alleged misconduct] [was] illegal." (TD's Mem. of Law, at 4).

Detailed in the Factual Background section *infra*, the appropriate date to use in determining whether the bulk of Universitas' claims are timely is in or around late 2012 and into early 2013, when TD finally complied with document and information subpoenas, and when thereupon, Universitas discovered TD's glaring complicity effecting the theft of the $30 million in death benefits owed to Universitas. Moreover, Universitas and TD executed a tolling agreement (*see* Exhibit 3 to Chapman Decl.) that tolled all statutes of limitation applicable to Universitas' claims from July 16, 2014 through July 16, 2015. Pursuant to its terms, the earliest date upon which

Universitas could commence an action against TD was the date it filed the instant action, which is July 17, 2015 (and amended July 24, 2015) ("the Complaint"). Thus, even assuming that TD is correct that Universitas' claims (except for its RICO claim) are governed by a three-year statute of limitations period, which they are not, any claim subject to a three-year limitations' period would not expire for at least another year, or longer.

TD also argues, and is likewise wrong, that Universitas seeks as its damages only the $30 million in life insurance proceeds. Clearly, Universitas is also seeking disgorgement of TD's profits and fees that it received through its misconduct with the Nova Group that was intended to and did result in the looting of the Trust's assets that Mr. Spencer had designated solely for Universitas. Contrary to TD's assertion, Universitas is not "attempting to sue TD Bank to recover what the wrongdoers have been unable or unwilling to pay." (TD's Mem. of Law, at 1). Rather, Universitas *is* suing TD and it is doing so because TD is also a wrongdoer – a culprit on equal footing with its accomplice the Nova Group and its members and affiliates.

## FACTUAL BACKGROUND

The issues critical to the Court's determination of whether to grant or deny TD's motion are (i) Universitas's injuries that are particular to TD's misconduct, (ii) the moment in time when Universitas discovered its injuries that resulted from TD's misconduct, and (iii) TD's substantial assistance to the Nova Group in (a) converting the Trust Funds, (b) breaching its fiduciary duty to Universitas as the known sole beneficiary of the Trust Funds, and (c) perpetrating a fraud on Universitas.

## I.   TD'S KNOWLEDGE AND CONDUCT AT THE TIME OF ACCOUNT OPENING

At the time that TD opened the subject account in May of 2009, TD knew or should have known that fraud was afoot. In 2002, the Connecticut Statewide Grievance Committee had charged Carpenter with several violations of the Connecticut Rules of Professional Conduct based

on allegations and findings that Carpenter had mismanaged and converted client funds as Chairman of one of Carpenter's many shell entities, Benistar Property Exchange Trust Co., Inc. (Compl. ¶ 11). In 2004, a Massachusetts federal grand jury indicted Carpenter for the crime of mail and wire fraud as Chairman of another of Carpenter's shell companies, Benistar, Ltd., and Benistar, Ltd.'s several subsidiaries operating out of Simsbury, Connecticut, a small suburban town in Hartford County, population in or around 24,000. (*Id.*).

In 2005, the Connecticut Statewide Grievance Committee determined that Carpenter had committed severe dishonesty, fraud, deceit, and misrepresentation, which resulted in the Connecticut Supreme Court indefinitely suspending Carpenter from the privilege of practicing law in Connecticut. (*Id.*). In 2005, a Massachusetts' jury convicted Carpenter of the crime of mail and wire fraud. (*Id.*). In 2008, a Massachusetts' jury convicted Carpenter of the crime mail and wire fraud. (*Id.*)

TD Bank knew that Nova, the Charter Oak Trust's trustee and administrator, was located at 100 Grist Mill Road, Simsbury, Connecticut, a property owned by Carpenter (the "Grist Mill Property"). The Nova Group was also affiliated with related entities Benistar Admin. Services, Inc. ("BASI"), Grist Mill Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings"), Grist Mill Trust, Hanover Trust Company ("Hanover"), Moonstone Partners, LLC ("Moonstone"), and Phoenix Capital Management, LLC ("Phoenix") – all of which shared the same address as Nova (collectively the "Grist Mill Entities"). (Compl. ¶ 40)

Moreover, TD Bank also knew that other banks had denied the Nova Group's application to open a new account for the Trust. Prior to opening an account for the Trust at TD Bank's Simsbury, Connecticut branch, Carpenter solicited several other banks, including U.S. Trust /Bank of America ("BofA"). However, such banks' due diligence and KYC practices revealed obvious, publicly available indicia of fraud and/or such banks were otherwise unable to obtain

information necessary to their respective due diligence investigations from Carpenter because Carpenter would not share said information.  Accordingly, BofA and the other banks denied Nova Group's applications to open bank accounts for the Trust.  (Compl. ¶ 18).

On or about May 12, 2009, the Nova Group submitted an application to TD Bank to open an account for the Trust.  Dawn Foster, a TD Bank employee, received the application and opened the account in the name of "THE CHARTER OAK TRUST," an entity listed on the application as having an address at the Grist Mill Property and Wayne Bursey as the Trustee. Pursuant to its internal due diligence policies and Know Your Customer rules, TD Bank performed due diligence on the Trust and the Nova Group and discovered Bursey and the Trust's lawsuit to collect the life insurance proceeds from Lincoln <u>for the benefit of Universitas</u>. (Compl. ¶ 50)

Nova received the two checks from Lincoln on or about May 15, 2009.  The checks were issued "PAY TO THE ORDER OF CHARTER OAK TRUST DTD 10/1/06 / WAYNE BURSEY TTEE / 100 GRIST MILL ROAD / SIMSBURY CT06070."  (Compl. ¶ 51).  May 18, 2009, the Nova Group deposited the two checks into the Trust's account at TD Bank's Simsbury, Connecticut branch.  Upon information and belief, TD Bank, upon receipt of the two checks from Lincoln, recognized that the checks represented trust funds, and required Bursey to produce a copy of the October 1, 2006 trust document referenced on the checks.   (Compl. 52).

Based upon this knowledge alone, TD, if it had been properly acting as a bank, and not as an accomplice in the theft of the death benefits, would not have opened and thereafter operated the accounts with and on the Nova Group's behalf.

## II.     TD'S KNOWLEDGE AND CONDUCT AFTER THE TIME OF ACCOUNT OPENING

In 2009, the Internal Revenue Service commenced a civil and criminal investigation into Nova, Carpenter, and Bursey, charging Nova, Carpenter and Bursey with the sale of fraudulent tax

shelters.  (Compl. ¶ 11).  In 2009, TD Bank considered Carpenter one of its most valuable customers, inviting Carpenter to an exclusive dinner as a token of its appreciation of Carpenter's lucrative business.  (Compl. ¶ 12), all the while knowing of his and Nova's and the Grist Mill Entities criminal conduct which was publicly available to TD.

On or about May 15, 2009, the Lincoln National Life Insurance Company ("Lincoln") issued two checks to the Charter Oak Trust ("Trust") totaling $30,677,276.85, representing the life insurance proceeds for two life insurance policies issued on the life of Sash A. Spencer ("Mr. Spencer").  (Compl. ¶ 38)   Mr. Spencer named Universitas the sole, irrevocable beneficiary of the death benefits paid into the Trust.  The Trust was required to pay over the insurance proceeds to Universitas.  (Compl. ¶ 38)

May 20, 2009, the Nova Group submitted an application to TD to open a business checking account.  Carolyn M. Starr, a TD employee, received the application and opened the account in the name of "NOVA GROUP INC."  The address for Nova on the account was 100 Grist Mill Road, Simsbury Connecticut.  The signatories on the account were Carpenter and Amanda Rossi. (Compl. 53).   Between May 20 and May 21, 2009, the Nova Group opened several <u>additional</u> accounts standing in the names of the Grist Mill Entities, including Grist Mill Capital, Grist Mill Holdings, Hanover, Moonstone, and Phoenix.  (Compl. ¶ 54)

On or about May 21, 2009, TD obtained from the Nova Group a copy of the Trust's Declaration of Trust ("Trust Document"), which named as the Trust's "sponsor" "NOVA GROUP, INC.," signed by Bursey as President of Nova.  TD Bank also knew that Carpenter was a manager of Nova because the day before, Carpenter opened a checking account for Nova, naming himself as a signatory on the account. (Compl. ¶ 55)

Also on May 21, 2009 (the same day that TD Bank received the Trust Document), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's

account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Capital in the amount of $8,677,276.75. (Compl. ¶ 57). On May 22, 2009 (the very next day), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Holdings in the amount of $2,100,000.00.

On May 26, 2009 (four days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits, to the TD Bank account for Grist Mill Capital in the amount of $2,186,566.00. (Compl. ¶ 59). In sum, over the course of four days, TD Bank aided the Nova Group in absconding with approximately $13 million – one-third of the Trust's assets, which assets were left to Universitas by Mr. Spencer so that Universitas could continue is charitable works – not to glut the coffers of Nova for the personal benefits of Carpenter and Bursey. (Compl. ¶ 60).

On June 9, 2009 (two weeks later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from the Trust's account holding the Lincoln death benefits to a bank account at another banking institution standing in the name of Grist Mill Trust in the amount of $3,798,882.81 (Compl. ¶ 61) On June 12, 2009 (three days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from a Grist Mill Capital non-TD Bank account back into TD Bank, to the Nova Group-controlled TD Bank account standing in the name of Phoenix in the amount of $2.7 million. (Compl. ¶ 62)

On July 11 and July 13, 2009 (one month later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from its TD Bank Phoenix account to its TD Bank Grist Mill Capital account in the amount of $2.5 million. (Compl. ¶ 63) On July 15, 2009 (two days later), TD Bank and its agents authorized and executed a wire transfer for the Nova Group from its TD Bank Grist Mill Holdings account to another Nova Group-controlled TD Bank account

standing in the name of Hanover, in the amount of $1.2 million. (Compl. ¶ 64)  On July 15, 2009

(the same day), TD Bank and its agents authorized and executed a wire transfer for the Nova Group

from its TD Bank Hanover account to another Nova Group-controlled TD Bank account standing in

the name of Moonstone in the amount of $1.1 million. (Compl. ¶ 65)  On October 27, 2009 (three

months later), TD Bank allowed Bursey to withdraw $19.8 million from the Trust account.  To

date, it is unknown to Universitas what became of the $19.8 million that TD Bank permitted Bursey

to simply withdraw from the Trust account.  (Compl. 66).

In April 2010, the Internal Revenue Service's investigation into Nova, Carpenter and

Bursey resulted in a federal raid on Nova, Carpenter, and Bursey's office located at 100 Grist Mill

Road, Simsbury, Connecticut (walking-distance from TD Bank's Simsbury, Connecticut branch,

where its agents executed the fraud complained of herein).  (Compl. ¶ 11).

On June 17, 2010, in light of the Nova Group's unlawful refusal to either turn over the

life insurance proceeds from Lincoln or to disclose the proceeds' whereabouts, Universitas

filed a demand for arbitration against the Nova Group.  (Compl. ¶ 70)  Within two weeks

thereafter, TD Bank, quizzically, closed all of the Nova Group- controlled Grist Mill Entity

bank accounts and turned over whatever Trust assets remained to the Nova Group or to entities

under its control.  (Compl. 71).

## III.    UNIVERSITAS' KNOWLEDGE OF TD'S MISCONDUCT

On January 24, 2011 (six months later), an arbitrator found Nova liable to Universitas and

awarded damages to Universitas in the amount of $26,558,308.26, plus pre-judgment interest at

the rate of ten percent. (Compl. 70)  District Judge Laura Taylor Swain  then confirmed said

award on June 5, 2012 and entered judgment for Universitas in the amount of $30,181,880.30.

*Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y. June 5, 2012), ECF

No. 40.  (Compl. ¶ 71).    Multiple subpoenas to produce documents issued thereafter, including

one against TD Bank, dated June 22, 2012.  *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y. June 5, 2012), ECF No. 48-1.   On July 9, 2012, Universitas issued an information and document subpoena on Nova Group and the Charter Oak Trust, which Judge Pitman granted on August 17, 2012. *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y.), ECF No. 133.

On November 21, 2012, Judge Pitman ordered TD to comply with Universitas' subpoena no later than December 5, 2012.  *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y. June 5, 2012), ECF No. 176.   Based on these productions, made late 2012 and into early 2013, Universitas discovered documents and information that informed its decision to bring the instant action, including without limitation, the surreptitious transfers into, out of, and among accounts in the name of the Grist Mill Entities, account opening documents, and certain emails.  Based upon this information and other information detailed in the First Amended Complaint in this action that Universitas discovered in late 2012 into early 2013, Universitas brought the instant action against TD Bank for the counts alleged in the First Amended Complaint.

On August 12, 2014, Judge Swain granted Universitas' turnover motion against  Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly

and severally. *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-cv-1590-LTS (S.D.N.Y. August 12, 2014), ECF No. 475.

Based upon these facts, Universitas has alleged viable claims at the pleading stage, and all of Universitas' claims are also timely.

## ARGUMENT

In reviewing a 12(b)(6) dismissal, the district court "must accept the material facts alleged in the complaint as true," and dismiss only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle [it] to relief." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (quotations omitted). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (quotations omitted).

## I. UNIVERSITAS HAS STATED A DIRECT AND/OR AN AIDING AND ABETTING CLAIM AGAINST TD BANK FOR BREACH OF FIDUCIARY, OR IN THE ALTERNATIVE, ORDINARY DUTY.

A claim for aiding and abetting a breach of fiduciary duty requires (i) a breach by a fiduciary of obligations to another, (ii) that the defendant knowingly induced or participated in the breach, and (iii) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157, 169 (2003); *accord In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir.2005); *see also Wechsler v. Bowman*, 285 N.Y. 284, 291, 34 N.E.2d 322, 326 (1941) ("Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que trust*."). With respect to the second requirement, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." *Kaufman*,

307 A.D.2d at 125, 760 N.Y.S.2d at 169. "A person knowingly participates in a breach of fiduciary duty when he or she provides 'substantial assistance' to the primary violator." *Id*. at 126, 760 N.Y.S.2d at 170.

As a general matter, "a depository bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *Norwest Mortgage, Inc. v. Dime Sav. Bank of N.Y.*, 280 A.D.2d 653, 654, 721 N.Y.S.2d 94, 95 (2d Dep't 2001); *see also Grace ex rel. Fox v. Corn Exch. Bank Trust Co.*, 287 N.Y. 94, 102, 38 N.E.2d 449, 452 (1941). "The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust." *Bischoff ex rel. Schneider v. Yorkville Bank*, 218 N.Y. 106, 111, 112 N.E. 759, 760 (1916); *see also Clarke v. Pub. Nat'l Bank & Trust Co. of N.Y.*, 259 N.Y. 285, 290, 181 N.E. 574, 576 (1932).

Nevertheless, "a bank may be liable for participation in [such a] diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed." *In re Knox*, 64 N.Y.2d 434, 438, 477 N.E.2d 448, 451, 488 N.Y.S.2d 146, 149 (1985). "Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly." *Bischoff*, 218 N.Y. at 113, 112 N.E. at 761. "Having such knowledge, [the bank is] under the duty to make reasonable inquiry and endeavor to prevent a diversion." *Id*. at 114, 112 N.E.2d at 761; *see also Norwest Mortgage*, 280 A.D.2d at 654, 721 N.Y.S.2d at 95 ("Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger [such] a duty of inquiry on the part of a depositary bank, and the bank's failure to conduct a reasonable inquiry when the obligation arises will result in the bank being charged with such knowledge as inquiry would have disclosed.").

Universitas has adequately alleged a claim against TD for breach of duty and aiding and abetting breach of fiduciary duty. TD is liable for Nova's fiduciary misappropriation because TD

had notice of or knew that Nova was wrongfully diverting known trust funds into accounts held by entities that TD knew were operating criminal and fraudulent enterprises.  TD further had notice of and/or knew of this diversion when it directed and accepted the diverted funds in satisfaction of mortgage payments on the Grist Mill property.  (*See* gen., Complaint).  And, by receiving payment from the diverted funds, TD acquired a benefit from the diversion.  Accordingly, Universitas' claim for breach of duty and/or aiding and abetting breach of duty should not be dismissed.

## II.     UNIVERSITAS HAS STATED A DIRECT AND AN AIDING AND ABETTING FRAUD CLAIM AGAINST TD BANK.

To establish liability for aiding and abetting fraud, the plaintiff must show (i) the existence of a fraud, (ii) the defendant's knowledge of the fraud, and (iii) that the defendant provided substantial assistance to advance the fraud's commission." *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y.2005) (internal quotation marks and citations omitted).  The leading opinion interpreting New York law in this respect is *Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240 (S.D.N.Y.1996), in which Judge Mukasey concluded that actual knowledge is required to impose liability on an aider and abettor under New York law."  *Id*. at 246, 246 N.Y.S.2d 247.

That Nova, Carpenter, and his accomplices perpetrated a fraud on Universitas is, as explained elsewhere, a matter of public record.  Universitas has alleged that TD aided and abetted this fraud by knowingly providing substantial assistance to its commission.  TD's knowledge is inferable based upon the facts, as alleged in the Complaint, and reframed *supra*.  Specifically, there is only one conclusion inferable based upon the facts known to TD at the time that TD aided the Nova Group's fraud.  That is, that TD knew that the signatories and Carpenter had criminal records for theft and fraud, recent ones and ones continuing to mount, and that connected to those crimes were companies operating out of the Grist Mill property address, including the Grist Mill Entities themselves and their TD accounts, also subjects of the criminal indictments and convictions.  That TD directed the transfer and looting of the trust funds into, out of, between and among accounts

controlled by the Nova Group, Carpenter, and Bursey does not count as "routine" banking services. TD's substantial assistance in this regard amount to nothing short of fraud services.

### III. UNIVERSITAS HAS STATED AN AIDING AND ABETTING CONVERSION CLAIM AGAINST TD BANK.

A claim for aiding and abetting conversion requires proof of (i) the existence of a primary violation, (ii) knowledge of the violation by the aider and abettor; and (iii) proof that the aider and abettor substantially assisted the primary wrongdoer. *See Lerner v. Fleet Bank*, N.A., 459 F.3d 273, 292 (2d Cir.2006); *IIT, an Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp.2d 536, 546–48 (S.D.N.Y. 2007)*; *U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, 30 Misc.3d 1216(A), 2011 WL 293716 (Sup.Ct.2011). A defendant provides substantial assistance only if he "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Diduck v. Kaszycki & Sons Contractors, Inc*., 974 F.2d 270, 284 (2d Cir.1992).

As discussed above, it is a matter of public record that Nova and its members converted the death benefits belonging to Universitas. Therefore, the existence of the primary violation is met. TD's actual knowledge of this conversion may be inferred by the surreptitious transfers of known trust funds into and out of accounts associated with the Grist Mill Entitles, which TD knew had been indicted and/or convicted in connection with Carpenter and Bursey for fraud and theft of client and trust assets. The Complaint alleges that TD knew that the $30 million in death benefits were trust assets and that TD knew that those assets were designated as belonging to Universitas.

Universitas has adequately alleged that TD, through its employees, provided substantial assistance in the conversion of the death benefits belonging to Universitas. The services that TD performed for Nova were not routine banking transactions. There is nothing routine about shuffling $30 million dollars in known trust funds within days of each other into and out of accounts held by entities that have a public record of criminal conduct. And, there is also nothing

routine about a bank accepting funds from a fiduciary account in satisfaction of the trustee's or trustee's member's mortgage to that bank, as TD did. Accordingly, Universitas' claim for aiding and abetting conversion should not be dismissed.

## IV. UNIVERSITAS HAS STATED A NEGLIGENCE CLAIM AGAINST TD BANK.

Contrary to TDs contentions, Universitas has set forth a cause of action based on TD's negligence. To establish a prima facie case of negligence under New York law, "a plaintiff must demonstrate (i) a duty owed by the defendant to the plaintiff, (ii) a breach thereof, and (iii) injury proximately resulting therefrom." *Lemer v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New Yor*k, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392 (1985)).

TD had a duty not to steal money from Universitas by facilitating co-conspirators with accounts that were intentionally manipulated to commit fraudulent activities. Furthermore, the officers, managers and/or supervisors of TD breached their duty to Universitas by failing to adequately review the bank accounts at issue, failing to supervise TD's employees, and allowing transactions to occur that violated the banking laws and regulations. TD was also negligent in failing to safeguard against the exact type of fraudulent activity that has been perpetrated upon Universitas. In addition to the employees named in the Complaint, if this Court affords Universitas the opportunity to conduct discovery, Universitas may be able to bring to light the extent that those employees possibly had the assistance of other employees of TD and Carpenter and Bursey who had actual knowledge that they too were facilitating the fraud perpetrated upon Universitas.

The facts put forth by Universitas provide that TD employees were acting within the scope of employment by utilizing TD's facilities in the normal course of conducting TD's activities and with TD's inferable actual knowledge that a fraud was being perpetrated upon Universitas for the financial benefit of TD. To be sure, nothing that TD did or failed to do was gratuitous. Only

discovery will mete out the full extent of the benefits that TD corporately received, or that its employees received as a result of their misconduct.

## V.    UNIVERSITAS HAS STATED A CLAIM AGAINST TD BANK FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT.

Pursuant to 18 U.S.C § 1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "In order to bring suit under § 1964(c), a plaintiff must plead (i) the defendant's violation of 18 U.S.C § 1962, (ii) an injury to the plaintiff's business or property, and (iii) causation of the injury by the defendant's violation." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Svs.*, Inc., 271 F.3d 374, 380 (2d Cir.2001).

Contrary to TD's assertion, Universitas had adequately alleged a RICO violation concerning the enterprise element of RICO, as well as TD's participation in and management of that enterprise. The statute defines an "enterprise" as including a "group of individuals associated in fact." 18 U.S.C. § 1961(4). The Supreme Court, in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), ruled that this requirement is satisfied by a "group of persons associated together for a common purpose of engaging in a course of conduct." *Id*. The enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy, so long as it is in fact an enterprise as defined in the statute. The Second Circuit has repeatedly found a sufficient enterprise where the complaint alleges a group without centralized hierarchy formed for a purpose of carrying out a pattern of racketeering acts. *Moss v. Morgan Stanley Inc*., 719 F.2d 5, 22 (2d Cir.1983). Universitas has sufficiently pleaded the "enterprise" element of its RICO claim because it has alleged that TD,

through its employees at the Simsbury Connecticut branch office, associated with certain persons within the Nova Group, forming an enterprise to loot the Charter Oak Trust's assets that belonged to Universitas, creating a network to launder the death benefits.

TD argues that even if Universitas has adequately alleged the enterprise element, TD's participation in the enterprise was not racketeering activity – that is, that TD merely provided banking services that ultimately benefited the Nova Group. TD should not be allowed to hide behind the fact that it is a bank to avoid RICO liability. As further discovery will undoubtedly support, Universitas has alleged that TD, through its employees, had actual knowledge that its activities and operations with respect to the Charter Oak Trust and its beneficiary Universitas were executed in furtherance of looting the funds belonging to Universitas through multiple predicate acts and transfers of those funds into a criminal enterprise. Accordingly, Universitas' RICO claim should not be dismissed.

## VI.    UNIVERSITAS HAS STATED AN UNJUST ENRICHMENT CLAIM AGAINST TD BANK.

To state a cause of action to recover damages for unjust enrichment, a plaintiff must allege that (i) the other party was enriched, (ii) at the plaintiff's expense, and (iii) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Levin v. Kitsis*, 920 N.Y.S.2d 131, 134 (2d Dep't 2012) (internal quotations omitted). The "essence" of an unjust enrichment claim is that "one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). Therefore, to support a claim for unjust enrichment, Universitas must allege that the defendants received money belonging to Universitas, which it has, repeatedly. *See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 313 (S.D.N.Y.1998) ("A defendant is enriched at the expense of a plaintiff when the defendant receives a benefit of money or property belonging to the plaintiff.") (citation omitted). Among other benefits that only

discovery will reveal or confirm, is that TD accepted for its own benefit mortgage payments out of the Trust funds that belonged to Universitas. TD therefore benefited from property belonging to Universitas. Accordingly, Universitas' claim for unjust enrichment should not be dismissed.

## VII. UNIVERSITAS' CLAIMS ARE TIMELY.

Universitas' claims are timely under New York law. Detailed in Factual Background, *supra*, Universitas did not discover the theft of its property, nor could it have, until at least November 2012. And, as previously discussed, the parties entered into a tolling agreement which covered the period from July 16, 2014 through July 16, 2015. Accordingly, as of the date the Universitas commenced the instant action, July 17, 2015, merely one year and approximately eight months had accrued on Universitas' claims, keeping Universitas well within all applicable statute of limitations periods.

The statute of limitations for Universitas' claim for fraud and/or aiding and abetting fraud is six years. *SEC v. Lee*, 720 F. Supp. 2d 305, 328 n.18 (S.D.N.Y. 2010); C.P.L.R. § 213(8). Universitas' claims for breach of fiduciary duty and/or aiding and abetting breach of fiduciary duty are also governed by a six year limitations period because they are based upon fraud. *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 262 (S.D.N.Y. Aug. 11, 2008). However, even if the Court finds that those claims should be subject to a three year limitations period, they are also timely because they are brought within three years. The statute of limitations for unjust enrichment is also subject to a six year limitations period measured from the date of the wrongful act. *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y. 2014). Universitas aiding and abetting conversion is subject to a three year period because the underlying tort is subject to a three year limitations period. Finally, Universitas' aiding and abetting conversion claim is subject to a four year limitations period, which is therefore also timely. For these reasons, Universitas' claims should not be dismissed on statute of limitations grounds.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss, and grant such other and further relief as the Court deems just and proper.


Dated:    New York, New York
           October 26, 2015

                                        Respectfully submitted,


                                        NAPOLI SHKOLNIK PLLC


                                        By: _____/s/  Paul Napoli_____
                                              Paul J. Napoli, Esq.
                                              Annie E. Causey, Esq.

                                        1301 Avenue of the Americas, 10th Floor
                                        New York, New York 10019
                                        (212) 397-1000

                                        *Attorneys for Plaintiff Universitas Education,
                                        LLC, Individually and on behalf of the Charter
                                        Oak Trust*