```
                              UNITED STATES DISTRICT COURT
                              DISTRICT OF MASSACHUSETTS


                                              )
       UNIVERSITAS EDUCATION, LLC,            )
                                              )
                         Plaintiff            )
                                              )  No.  1:15-cv-11848-DPW
       vs.                                    )
                                              )
       JACK E. ROBINSON, III A/K/A            )
       JACK E. ROBINSON,                      )
                                              )
                         Defendant            )


       BEFORE:   THE HONORABLE DOUGLAS P. WOODLOCK


                    MOTION HEARING AND SCHEDULING CONFERENCE



                 John Joseph Moakley United States Courthouse
                              Courtroom No. 1
                             One Courthouse Way
                             Boston, MA 02210
                         Friday, December 11, 2015
                                 2:05 p.m.



                      Brenda K. Hancock, RMR, CRR
                         Official Court Reporter
                John Joseph Moakley United States Courthouse
                             One Courthouse Way
                             Boston, MA 02210
                              (617)439-3214
```

```
 1     APPEARANCES:
 2
 3          RIEMER & BRAUNSTEIN
            By: Paul S. Samson, Esq.
 4          Three Center Plaza
            6th Floor
 5          Boston, MA 02108
            On behalf of the Plaintiff.
 6
 7          LOEB & LOEB LLP
            By: Paula K. Colbath, Esq.
 8          345 Park Avenue
            New York, NY 10154
 9          On behalf of the Plaintiff.
10
            THE LAW OFFICES OF SETH L. MARCUS
11          By:  Seth L. Marcus, Esq.
            Suite 101
12          777 Westchester Ave.
            White Plains, NY 10604
13          On behalf of the Defendant.
14
15
16
17
18
19
20
21
22
23
24
25
```

1     (The following proceedings were held in open court
2  before the Honorable Douglas P. Woodlock, United States
3  District Judge, United States District Court, District of
4  Massachusetts, at the John J. Moakley United States Courthouse,
5  One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
6  Friday, December 11, 2015):
7           THE LAW CLERK:  All rise.
8     (The Honorable Court entered the courtroom at 2:05 p.m.)
9           THE LAW CLERK:  This is Civil Case No. 15-11848,
10 Universitas Education, LLC v. Robinson.  This Honorable Court
11 is now in session.  You may be seated.
12          THE COURT:  Well, maybe I can cut to the chase a bit
13 on this.  On the assumption that I am going to say that there
14 is at least adequate pleading to show that knowledge took place
15 as late as November of 2012, and that Massachusetts law would
16 look to New York law for conflict purposes, what else is there
17 to say about the Motion to Dismiss from the defendant's point
18 of view?
19          MR. MARCUS:  Those are two of the major points that we
20 are disputing.  I would urge that they should be decided
21 otherwise, but if that is not a point that you would like to
22 hear argument on --
23          THE COURT:  I do not think so.  My view is that it may
24 well be that there is a jury question with respect to statute
25 of limitations if it is contested.  But my reading of the

pleadings tells me that it is plausibly alleged that the plaintiff is not chargeable with the kind of inquiry knowledge until the point at which Magistrate Judge Pitman issued his subpoena enforcement decision. I am not foreclosing the development of that issue but simply saying that for Motion to Dismiss purposes it is not here. So, that is a fact question.

The question of the application of choice of law here is a law question I have thought about a lot, and I am satisfied that Massachusetts Courts would apply the law of New York in dealing with the several claims that are presented here. You can argue, if you want, but that is why I said I am cutting to the chase on this thing.

MR. MARCUS: My argument would be restating what was in my brief, and I thought that it was persuasive. However, and I assume there will be a decision on --

THE COURT: Well, there is a decision right now. I will probably issue something to deal with that, but we are going to talk about how we get this case ready to try and for factual development. I do not want to go any further with this. It has kicked around a little while. It has kicked around a while in the Southern District of New York. I want to get to this and get to it promptly.

So, the one maybe hangnail left, I suppose, is the question of the citizenship of Mr. Robinson. It is claimed that it is not properly alleged. I think that is right, but I

am not dismissing the case on that basis. If there has to be discovery on it, there will be discovery on it.

If he practices law in the Commonwealth of Massachusetts, there is enough there for me to perceive, anyway, that he is a citizen of Massachusetts. But if you want to press that, then I will let you come back at it with a Motion to Dismiss after some factual discovery. Do you really think it is in dispute?

MR. MARCUS: I think even in our papers it is a pleading question. It was really more of a pleading question as we raised in our papers, so, yeah, I mean, I think that's probably correct.

THE COURT: So, I am not going to set out a separate process for that. I would suggest to the plaintiffs that they may want to amend their Complaint when they have a good-faith basis for actually asserting citizenship in Massachusetts. If you do not have that basis, of course you have got a Rule 11 problem, so you will probably want to tack that down, but that can be done, I think, with a simple interrogatory directed to Mr. Robinson on it. I will permit the pleadings to be tidied up in that sense as well.

The claim for conversion, I think, and the claim for professional malpractice, that is, the sixth claim for relief and the ninth claim for relief, seem to me to be time barred. Not that that makes any difference in the larger scheme of

1  things, but I think they are going to be out, so I just want
2  you to know that. And, of course, they have withdrawn the
3  claim for statutory theft in this case. But the case goes
4  forward with these claims in it.
5      Now, what do we need to get it going here? How long?
6      MR. MARCUS: We need an answer, your Honor, first and
7  foremost.
8      THE COURT: Of course, but that is going to be perhaps
9  even expedited in this case. Now I am talking about what do
10 you need to get the case --
11     MR. SAMSON: Your Honor, Paul Samson for the
12 plaintiff. When we were last here on the status conference and
13 we filed our Rule 26(f) plan, we set things out two ways. One
14 was assuming the Court proceeded right away with this, and
15 another way is, assuming the Court stayed everything until the
16 Motion to Dismiss result, how many days after resolution of the
17 Motion to Dismiss. So, to the extent that it is viewed as
18 being denied today --
19     THE COURT: It is denied today.
20     MR. SAMSON: -- the agreed schedule, I think, plugs
21 right into the number of days after --
22     THE COURT: Well, let's go through it, not just number
23 of days afterwards, because the number of days afterwards are
24 more than the number of fingers I have on both hands, and so I
25 would like to have dates certain to deal with all of this.

1     MR. SAMSON:  Okay.  Initial disclosures we were
2  talking roughly two, two and a half weeks at the time.  Can I
3  suggest two weeks from today?
4     MR. MARCUS:  Well, your Honor, actually, first, that's
5  why I sort of mentioned an answer.  I would like to be able to
6  put in an answer before we start doing initial disclosures.
7     THE COURT:  I do not think so.  Listen, this case is
8  one in which there will be no tolerance for any delays that are
9  unnecessary.  You can file your answer.  That is fine.  But you
10 had your Motion to Dismiss practice on it.  Now we will get
11 going on it.  I do not think that the answer is going to refine
12 the discovery that much.
13    MR. MARCUS:  Then, the only other point that I would
14 make is the week after next I am going to be away for a week.
15 If you could give me a week from when I get back, which would
16 be sort of very early January to start things off?
17    THE COURT:  Well, let me put it this way:  Nobody gets
18 discovery --
19    MR. MARCUS:  Right.
20    THE COURT:  -- no side gets discovery until they have
21 done their initial disclosures.  They disclose earlier, they
22 start to get discovery.  That is to say that they get to start
23 to file for discovery and move forward on discovery.  You do
24 not until you do your initial disclosures.  I am not sure that
25 makes very much difference either, but it is at least implicit

1  in the rule or explicit in the rule as one of the ways that we
2  police this.  So, I guess I will say would January 8th be
3  sufficient for you to --
4              MR. MARCUS:  That would be fine, your Honor.  Thank
5  you.
6              THE COURT:  So, initial disclosures are due no later
7  than January 8th.  Now, if the plaintiff does its initial
8  disclosures before, it can get going on discovery.
9              But let's move to the next date.  Initial disclosures
10 on January 8th.
11             MR. SAMSON:  Demands for document discovery, we had
12 that --
13             THE COURT:  Let me tell you something more broadly.
14 My view is I will talk about fact discovery.  How you organize
15 your fact discovery, when you do your depositions, when you do
16 your interrogatories, when you do your demands for documents is
17 really up to you.  I am not going to choreograph it that
18 finely, but I will set a date for fact discovery, which
19 includes depositions, and it means all fact discovery done.  It
20 does not mean on the night before fact discovery ends a series
21 of interrogatories are filed or deposition subpoenas.
22             So, what do you want?
23             MR. SAMSON:  When we filed our report we agreed on
24 June 15th.  We filed the report on September 22nd.  So, add two
25 months and a few days to June 15th for fact discovery?

1         THE COURT: So, that is all of fact discovery?

2         MR. SAMSON: Yes, and disclosure of experts is what we
3 had agreed on.

4         THE COURT: Disclosure of experts to take place at the
5 confusion of fact discovery?

6         MR. SAMSON: Yes, the names of the experts. The
7 expert reports are a different date.

8         THE COURT: So, if I set, let's say, September 9 --

9         MR. SAMSON: That's agreeable, your Honor.

10        THE COURT: -- for fact discovery? If I do not hear
11 objections, it is going to be the date.

12        MR. MARCUS: That's fine, your Honor.

13        MR. SAMSON: We did in the report seek to reserve the
14 right to go more than seven hours on some of the key witnesses,
15 but our plan was to play that by ear. If we take the
16 deposition and we feel in good faith that we do not have enough
17 time to complete it for one reason or another, then we would
18 ask the Court for more time.

19        THE COURT: This is one of those things in which what
20 goes around comes around, which is the legal principle that is
21 going to guide all of this. First, you work it out among
22 yourselves. I have a feeling that you will work it out among
23 yourselves, because you both have an interest in both concise
24 depositions but also perhaps going longer on certain
25 depositions.

1   MR. SAMSON: We did agree, for the record, the keeper
2   of the record, document-only subpoenas don't count to the
3   ten-deposition limit.
4   THE COURT: Again, that is a matter that I will leave
5   to you.
6   MR. SAMSON: Okay. We had agreed on the opening
7   expert reports by both sides on June 30 of next year. So, add
8   two and a half months to that.
9   THE COURT: September 30?
10  MR. SAMSON: Yes.
11  THE COURT: Because September 9th is close of fact
12  discovery and identification by name of experts.
13  MR. SAMSON: Then --
14  THE COURT: Hold on a second. I am slower than you
15  guys are.
16  MR. SAMSON: I'm sorry.
17  THE COURT: So, September 30 for Rule 26 reports.
18  MR. SAMSON: For the opening reports.
19  THE COURT: Pardon me?
20  MR. SAMSON: For the opening reports.
21  THE COURT: Yes.
22  MR. SAMSON: And then an additional 45 days is what
23  the parties had agreed on for the rebuttal reports, which would
24  take you to November 15th.
25  THE COURT: Why so long for rebuttal reports? What

```
 1  are the reports here?  It is a fraud case.  What are the
 2  reports here?
 3          MR. SAMSON:  Thirty days is fine.  We can do it in
 4  less time than 45 days.  The Court's right.
 5          THE COURT:  Now that you have got my attention, what
 6  do you think these experts are going to be?  They are going to
 7  be accountants, right?
 8          MR. SAMSON:  Probably, if there are any experts, your
 9  Honor.
10          THE COURT:  Right.  I have some question about that,
11  but go ahead.
12          MR. SAMSON:  There's an issue as to whether or not the
13  judgment has been warranted uncollectible and whether or not
14  you can reasonably estimate future damages or its too
15  speculative and you run into the problems of the Bankers Trust
16  and this Stochastic case.  But I don't know that we will have
17  an expert on that.  It's just a possibility.
18          THE COURT:  You have got one.  You are looking at him,
19  I think.  I think that is my responsibility.  I do not think
20  that bringing in someone to talk about that is going to be so
21  helpful, and I am not sure exactly how that works.  But, in any
22  event --
23          MR. MARCUS:  Your Honor, I wasn't sure that there were
24  going to be experts in this case either, but to the extent that
25  the plaintiffs wanted to preserve their ability to do it if
```

1  they saw fit, I just want to preserve equitable ability to
2  respond properly.
3          THE COURT:  Sure.  So, what I am going to say is that,
4  assuming experts, then rebuttal experts November 4th.
5          MR. SAMSON:  We left 45 days for expert discovery.
6          THE COURT:  All right.  So, I will make that expert
7  discovery completed the eve before New Year's Eve, which is
8  December 30.  That will complete the expert discovery.
9          MR. SAMSON:  And both sides felt that any dispositive
10 motions could be filed within 15 days of the conclusion of
11 expert discovery.  We will have the facts and reports by then.
12         THE COURT:  But now let's get to this point of are
13 there experts, and if there are not experts what happens to
14 dispositive motions.  What I am going to tell you is, because I
15 do not see people running up the bill for useless experts, that
16 if there are not going to be any experts, and they will have
17 been identified by September 9th, or not, then if there are not
18 going to be any experts, then dispositive motions due
19 September 30th.
20         MR. SAMSON:  That's agreeable to us, your Honor.
21         THE COURT:  And then opposition by -- I will give you
22 November 4th on the opposition there.  Those can be
23 cross-motions, that is up to you.  But we are not going to have
24 any more briefing than that.  And we will have a motion hearing
25 on November 30th for dispositive motions.

1  MR. MARCUS: I'm sorry, your Honor. I didn't get the
2  date for oppositions to the motion.
3  THE COURT: The opposition will be November 4th. It
4  is playing off the putative expert times so that the Motions
5  for Summary Judgment will be September 30, assuming that there
6  are no experts.
7  MR. MARCUS: I just suggest maybe November 4th is a
8  little tight on an opposition to a summary judgment motion.
9  THE COURT: Oh, I beg your pardon. Oh, no, I do not.
10 I stand by it. September 30th to November 4th?
11 MR. SAMSON: That's 35 days.
12 MR. MARCUS: I'm sorry. I must have gotten the
13 dispositive motion date wrong. I had 9/30 as the dispositive
14 motion.
15 THE COURT: That is the date for dispositive motion.
16 MR. MARCUS: I apologize.
17 THE COURT: I am fully prepared to believe that I said
18 it wrong too, but now we are going to get it right.
19 MR. MARCUS: I just skipped to October. That's fine.
20 THE COURT: So, assuming no experts, then it is
21 September 30 for dispositive motions and oppositions
22 November 4th, with a dispositive motion hearing date of
23 November 30, and if there are experts, then we will deal with
24 that separately.
25 So, if you file with or if experts are submitted and

1  you think you have to have experts for purposes of summary
2  judgment, and I am not sure that the experts are going to
3  change summary judgment one way or the other, you are in
4  fact-dispute land if you have got experts, as far as I am
5  concerned.  So, I think I am going to use that dispositive
6  motion date, in any event, and maybe tell you that we will put
7  off experts until after dispositive motions.  Doesn't that work
8  right?
9           MR. SAMSON:  If there are dispositive motions, and it
10 may be that the parties each concede there are issues of fact
11 that need to be resolved.
12          THE COURT:  Oh, I want to emphasize that a sure way of
13 making me grumpy is to file a dispositive motion that has no
14 chance in hell of getting allowed on the benighted thought that
15 I might be educated by it but not dispose of it.  Do not do it.
16 Dispositive motions should dispose of something and you have a
17 realistic likelihood of disposing of something.
18          But I will use that as the date for dispositive
19 motions, irrespective of whether or not you identify experts on
20 September 9th, but I think you should identify the experts on
21 September 9th and then, when we have the dispositive-motion
22 filing and you either file or you do not file, if you do not
23 file we will go forward with experts, if you do we will not,
24 and you do not file a Motion for Summary Judgment, I will get
25 it set down for some sort of pretrial hearing or pretrial

1  process for filings and so on.
2          MR. SAMSON: Thank you, your Honor. I did want to
3  make one comment on the diversity question. There is a federal
4  statute that I know this Court has referred to in another
5  decision, but here's what happened: When Ms. Colbath took his
6  deposition in 2012 he had a Massachusetts driver's license and
7  said that he lived at a place in Duxbury. We did a title
8  search before we brought this case. That was his parents'
9  house, and the house has been sold, and he hasn't told us where
10 he claims he lives now.
11         THE COURT: But now you do your initial disclosures
12 and you can ask him a question --
13         MR. SAMSON: Right, right.
14         THE COURT: -- about, "Where did you live at the time
15 that the lawsuit was brought?" That is what we are dealing
16 with here.
17         MR. SAMSON: Exactly. I know.
18         THE COURT: So, if you want to kind of tie that down,
19 you will do it. As I said, the defendant here raises a matter
20 of pleading. I think it can be adequately addressed. If you
21 do not address it and they still raise it, I will entertain a
22 Motion to Dismiss on that ground. So, I would get it
23 straightened away, but this is something that can be resolved.
24         MR. SAMSON: It should be easily resolved, your Honor,
25 by the parties.

16

```
1            THE COURT:  Right.
2            MR. SAMSON:  Either there is diversity or there is
3   not.
4            THE COURT:  Right.  And if there is not, we are still
5   here on a form of supplemental jurisdiction, in any event, on
6   it.  If ultimately the RICO claim goes out, I still think I
7   would probably exercise supplemental jurisdiction over the
8   case, if there is a basis for assuming, as I do, that the RICO
9   claims are the same as, the same common nucleus of fact as the
10  remaining claims for relief.  Okay?
11           MR. SAMSON:  Thank you, your Honor.
12           THE COURT:  Now, what I would like you to do, both of
13  you, while we have taken down what these dates are, you will
14  reduce them to writing as your understanding of them, file it
15  with us by next week, say, Tuesday of next week; that initial
16  disclosure issues will be made no later than January 8th, that
17  all fact discovery will be completed by September 9th, 2015,
18  and on September 9th of 2015 there will be identification by
19  name of any experts to be filed.  Dispositive motions will be
20  filed by September 30, oppositions by November 4th, a
21  dispositive motion date at 2 :30 on November 30th in this
22  courtroom, and on a parallel track, if there are experts, you
23  will file your Rule 26 expert reports by September 30, your
24  rebuttal experts by November 4th, and expert depositions will
25  be completed by December 30.
```

1          I think that covers everything that we can deal with
2 right now.
3          MR. SAMSON:  Thank you, your Honor.
4          MR. MARCUS:  Thank you, your Honor.
5          MS. COLBATH:  Thank you, your Honor.
6          THE COURT:  It may take a little bit of time, but I
7 will get something in writing that explains more completely
8 what my views are.
9          MR. MARCUS: Yes, sir.  One thing I do want to be
10 clear on in reporting back to my client is the statute of
11 limitations defense.  The essential ruling is going to be that
12 there are factual issues with regard to statute of limitations,
13 so those can still be raised as defenses?
14          THE COURT:  Right.  No, I do not consider it to have
15 been resolved.  I simply consider that you have a very high
16 standard that you have to meet for purposes of an affirmative
17 defense like statute of limitations, and that really is that
18 there is no basis in the pleadings to believe that the statute
19 of limitations has not been exceeded.  I find in these
20 pleadings that there is a basis for doing that, and that is
21 that this could be as late as the date on which Magistrate
22 Judge Pitman issued his order with respect to the subpoenas.
23 You may argue earlier, you may have a factual development of
24 earlier.  I would not be too sanguine about that, but there it
25 is.  It is not resolved by me as a matter of law yet, and that

1  is where it is going to go.
2          With respect to the other ones, I think it is pretty
3  clear I am going to let New York law apply here.  I think that
4  that is what the Massachusetts Courts would do under these
5  circumstances.
6          MR. MARCUS:  Okay.
7          THE COURT:  But I will try to give you something.  You
8  know what you need, and I will try to give you something that
9  is a little bit more fulsome in explanation of it, but it may
10 take a little while, because I will be working on some other
11 things.  Okay?
12         MR. SAMSON:  Thank you, your Honor.
13         MS. COLBATH:  Thank you, your Honor.
14         MR. MARCUS:  Thank you, your Honor.
15         THE LAW CLERK:  All rise.
16      (The Honorable Court exited the courtroom at 2:30 p.m.)
17        (WHEREUPON, the proceedings adjourned at 2:30 p.m.)

## C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of *Universitas Education LLC v. Robinson*, No. 1:15-cv-11848-DPW.

Date: December 17, 2015     /s/ *Brenda K. Hancock*
Brenda K. Hancock, RMR, CRR
Official Court Reporter